876 So.2d 39 (2004)
STATE of Louisiana
v.
Sean STRANGE, Talbert Porter.
No. 2004-KK-0273.
Supreme Court of Louisiana.
May 14, 2004.
PER CURIAM.
The state's application is hereby granted, the rulings of the courts below suppressing evidence seized from defendants are reversed, and this case is remanded to the district court for further proceedings.
The evidence adduced at the hearing on defendants' motion to suppress established that on November 19, 2002, a Thunderbird traveling east on Interstate 10 through St. Martin Parish caught the attention of State Trooper Troy Dupuis because the vehicle had both a regular or "hard" license plate located in its customary position near the rear bumper of the car and a paper or temporary tag displayed in the back window. Both tags were from Texas. Aware of Louisiana law requiring that the owner of a vehicle must remove any temporary tags once he receives a hard copy of his license plate, Trooper Dupuis decided to stop the Thunderbird to determine "which plate was the real plate" and to check the registration "to see if it wasn't stolen" or whether the plates had been switched.
After pulling the vehicle over, the trooper explained the reason for the stop, determined that the driver, Talbert Porter, had no license on him and that the passenger, Sean Strange, was in fact the owner of the vehicle. A check of the papers produced by defendant Strange, including a bill of sale from a car dealer in Fort Worth, Texas, satisfied the trooper that Strange had recently purchased the vehicle in Texas and was driving on a temporary tag while waiting for his registration in his own name. Strange had, in fact, insured the vehicle on the day before the officer pulled the car over in Louisiana. The paper work thus "show[ed] that [the vehicle] was not stolen" and that its plates had not been switched. Strange explained to the trooper on the scene, as he would later to the court during the hearing on the motion to suppress, that Texas would eventually issue a registration sticker to be placed on the front windshield near the inspection sticker as a replacement for the temporary tag issued by the car dealer. He further explained that in Texas, license plates do not change with the owner, "[t]he owners change with [the plates]."
*40 In the course of checking the paper work, the trooper also asked defendants about their travel plans, and obtained largely consistent accounts that they were traveling from Texas to Florida to see Strange's aunt in Tallahassee. However, the trooper noted that the defendants had embarked on a cross country trip without a clear idea of where the aunt lived in Tallahassee and that defendant Strange, rather than becoming less nervous as the traffic stop proceeded, became increasingly agitated. His suspicions aroused, Trooper Dupuis asked for, and received, Strange's consent to search the vehicle. In the course of the ensuing search, the trooper discovered 60 pounds of marijuana hidden behind the Thunderbird's rear bumper. The trooper immediately placed the defendants under arrest, and in a search incident to the arrests discovered small amounts of cocaine and methamphetamine concealed in defendant Strange's wallet. The state subsequently charged the defendants with a variety of offenses arising out of the stop including possession of marijuana with intent to distribute in violation of La.R.S. 40:966.
On the basis of the testimony provided by Trooper Dupuis and the defendants at the evidentiary hearing conducted in May, 2003, the trial court, satisfied that Texas law permitted a vehicle registered in that state to display both a hard license plate and a temporary tag, and that Louisiana permits vehicles properly registered in other jurisdictions to travel on the roads of this state without complying with this state's registration requirements, granted respondents' motion to suppress. The court thus took the position that "[i]f the plates were properly displayed under Texas law, then [Trooper Dupuis] didn't have any reasonable suspicion to stop them." The court of appeal agreed. State v. Strange, 03-0901 (La.App. 3rd Cir.12/30/03), 861 So.2d 951 (unpub'd)(Saunders, J., dissenting). The court acknowledged that as a matter of Louisiana law, a vehicle may not display both a hard license plate and a dealer's temporary tag. See La.R.S. 47:519(G). Under certain circumstances, failure of a vehicle owner to destroy the temporary tag on receipt of annual plates constitutes a one-year misdemeanor offense. La.R.S. 47:519(J). However, the court of appeal further noted that "Louisiana also has reciprocity arrangements with other states, which permit vehicles owned by out-of-state residents and lawfully registered in those states to legally travel upon Louisiana's public highways without being registered here." Strange, 03-0901 at 5 (citing La.R.S. 47:511).[1] The court thus reasoned that while "it is a violation of Louisiana law for a Louisiana-registered vehicle to display both the temporary and permanent tags at the same time ... there is no violation of Louisiana law when a vehicle registered in another state displays both at the same time if that state allows such a display." Id. Given that premise, the court of appeal affirmed the ruling of the trial court on grounds that "the trooper's subjective mistaken belief that the display violated Louisiana vehicle registration laws and any `hunch' *41 based thereon were not sufficient to establish a reasonable basis or a reasonable cause for the traffic stop." Id., at 5-6.
In dissent, Saunders, J., argued that "[a]lthough subsequent research revealed that the vehicle was properly registered in Texas, it is unrealistic to expect Louisiana State Troopers, or any other peace officer of the State of Louisiana to be versed in the vehicle registration laws of the other forty-nine states." Strange, 03-0901 at 6 (Saunders, J., dissenting). In his view, the vehicle's display of a hard license plate and temporary tag constituted the "`particularized and objective basis'" required for a lawful investigatory stop which then led to the discovery of the marijuana concealed in the car after defendant gave his consent to search the vehicle. Id., at 6 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).
We agree with Judge Saunders that the pertinent question in the present case is not whether defendant Strange had taken all of the appropriate steps to register the Thunderbird in his name in Texas under the laws of that state after he purchased the vehicle, and had in the interim displayed on the vehicle the license tags required by Texas law,[2] but whether Trooper Dupuis's conduct was reasonable as a matter of the Fourth Amendment and La. Const. art. I, § 5. See Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990)(" "It is apparent that in order to satisfy the `reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government  whether the magistrate issuing a warrant, the police officer conducting a search or seizure under one of the exceptions to the warrant requirement  is not that they always be correct, but that they always be reasonable....""). We also agree with Judge Saunders that while the trooper's suspicions about the status of the vehicle were ultimately unfounded, the apparent discrepancy in the vehicle's plates arising from the simultaneous display of both permanent and temporary tags, an anomaly in Louisiana, and a violation of this state's law if the tags had been issued by Louisiana, provided the officer with the requisite "`minimal level of objective justification,'" INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), for a brief stop of the Thunderbird to determine whether the different tags revealed an underlying problem regarding the lawful ownership of the car by its occupants or its proper registration in a foreign jurisdiction, or whether it simply reflected the fact, as it turned out, that Texas follows different criteria for *42 registering newly purchased vehicles than does Louisiana. The stop accomplished its initial purpose by proving to the trooper's satisfaction that the vehicle had not been stolen, that respondent Strange had lawful possession of it while waiting for a registration tag from the state of Texas, and that he had otherwise fully complied with the registration laws of that jurisdiction.
The trial court therefore erred in concluding that the initial stop of the Thunderbird was illegal. However, the court correctly found that "once the stop was made, everything that occurred after that was appropriate." Nothing precluded Trooper Dupuis from engaging the defendants in conversation, State v. Lopez, 00-0562 (La.10/30/00), 772 So.2d 90, and the officer did not need any degree of reasonable suspicion, as opposed to intuition or "hunch," to ask for, and receive, Strange's consent to search the car. Consent is a well-recognized exception to the warrant requirement, State v. Owen, 453 So.2d 1202, 1206 (La.1984); State v. Packard, 389 So.2d 56, 58 (La.1980), and rendered lawful the subsequent discovery and seizure of the marijuana hidden behind the Thunderbirds's rear bumper. Seizure of the small amount of cocaine and methamphetamine from Strange's wallet was incident to the lawful arrests and was therefore also lawful. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wilson, 467 So.2d 503, 517 (La.1985).
The ruling of the trial court granting defendants' motion to suppress is reversed, and this case is remanded to the court for further proceedings in accord with the views expressed herein.
JUDGMENT REVERSED; CASE REMANDED.
NOTES
[1] The statute provides that "[a] vehicle owned by a resident of another state, which is lawfully registered in that state, may be operated upon the public highways of this state without registration or license, when, by statute, contract, or understanding, an agreement between the proper authorities of such state and the secretary of the Department of Public Safety and Corrections has effected reciprocal arrangements whereby license plates of each state affected thereby are recognized by each other states, respectively, and when the vehicle bears approved license places of such state, if same are required by the laws of that state." R.S. 47:511(A).
[2] In fact, under Texas law, the Department of Transportation issues a single set of license plates for a vehicle (front and back) for use during a five-year period and thereafter "[o]n application and payment of the prescribed fee for a renewal of the registration of a vehicle for the first, second, third, or fourth registration year after the issuance of a license plate or set of plates for the vehicle, the department shall issue a registration insignia for the validation of the license plate or plates to be attached .... to the inside of the vehicle's windshield ... within six inches of the place where the motor vehicle inspection sticker is required to be placed." Tex. Transp. Code Ann., § 502.180(c) and (d) (Vernon 1999). In addition, temporary cardboard tags issued by a car dealer, valid for a period of 21 days while the new owner registers the vehicle, Tex. Transp. Code Ann., § 503.063 (Vernon 1999), "may be displayed either in the rear window or on the rear license plate holder of unregistered vehicles," and in the case of a car bearing Texas multi-year license plates, "may be ... placed over the rear license plate." 16 Tex. Admin. Code § 111.9 (2004). However, "[t]he multi-year plates should not be removed from the vehicle." Id. (emphasis added).