# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-497

**STATE OF LOUISIANA**

**VERSUS**

**SEAN A. STRANGE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 02-224322
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

## CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.

Hon. J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
Counsel for State/Appellee:
    State of Louisiana

Jeffrey J. Trosclair
Assistant DA 16th JDC
Courthouse, 5th Floor
Franklin, LA 70538
Counsel for State/Appellee:
    State of Louisiana

**G. Paul Marx**
**Attorney at Law**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**Counsel for Defendant/Appellant:**
**Sean A. Strange**

**Pickett, Judge.**

### STATEMENT OF FACTS

On the morning of November 19, 2002, the defendant, Sean Strange, and his cousin, Talbert Porter, were traveling east on Interstate 10 in St. Martin Parish in the defendant's Ford Thunderbird. Louisiana State Trooper Troy Dupuis pulled the vehicle over because he noticed it displayed two license plates - one regular or "hard" license plate located in the customary position near the rear bumper of the car, and also a temporary paper tag displayed in the vehicle's back window. Mr. Porter, who had been driving, could not produce his driver's license, and Trooper Dupuis' check determined that it had been suspended.

As Trooper Dupuis questioned the men about their destination and the general plans for their trip, they both told him that they were traveling from Dallas, Texas to Florida to stay with an aunt. The men did not know, however, the directions to the aunt's home and could not tell him how long they would be staying in Florida. Trooper Dupuis, suspicious that the men might be involved in illegal narcotics activity, obtained the defendant's oral and written consent to search the vehicle. In the course of his search, Trooper Dupuis discovered approximately sixty pounds of marijuana concealed in a false compartment behind the car's rear bumper. The defendant and Mr. Porter were arrested and a search of the vehicle incident to the arrests revealed small amounts of cocaine and methamphetamine in Mr. Porter's wallet, which had been concealed behind the vehicle's glove compartment.

### ASSIGNMENTS OF ERROR

The defendant, Sean Strange, was charged by bill of information on January 3,

1

2002, with one count of possession of marijuana with the intent to distribute in violation of La.R.S. 40:966(A)(1) and one count of possession of cocaine in violation of La.R.S. 40:967(C).

On May 8, 2003, the trial court granted the defendant's Motion to Suppress, finding that the officer who stopped the defendant's vehicle did not have grounds for reasonable suspicion for the stop. On December 30, 2003, this court denied the State's supervisory writ application and upheld the defendant's Motion to Suppress. However, the Louisiana Supreme Court granted the State's writ application and subsequently reversed the trial court's ruling on the Motion to Suppress. *See State v. Strange,* 04-273 (La. 5/14/04), 876 So.2d 39.

The matter was remanded and continued to a two-day jury trial, which began on March 1, 2005. The jury found the defendant guilty of attempted possession of marijuana with intent to distribute. On August 12, 2005, the trial court imposed a sentence of five years at hard labor, with all but eighteen months suspended, and supervised probation for three years following his custodial release. The defendant subsequently filed a Motion to Reconsider, which was denied on October 21, 2005.

The defendant now appeals his conviction, arguing that the evidence presented by the state was insufficient to support the verdict, and that the search of his vehicle was illegal because he was detained for "an unreasonable time after the end of the traffic stop investigation."

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find

one error patent.

The trial court erred when it ordered the defendant to pay a probation supervision fee of "not less than $50.00" per month. When probation is ordered, a probation supervision fee must be imposed as a condition of probation. La.Code Crim.P. art. 895 and *State v. Bey*, 03-277 (La.App. 3 Cir. 10/15/03), 857 So.2d 1268. By failing to impose a definite supervision fee, the trial court gave the probation office discretion to establish a greater amount. In *State v. Patterson*, 628 So.2d 107 (La.App. 5 Cir. 1993), the fifth circuit stated that any conditions of probation not imposed by the trial court are illegal and should not be used for revocation. This matter is remanded and the trial court is instructed to impose a definite probation supervision fee as mandated by La.Code Crim.P. arts. 895 and 895.1.

Further, we find that the minutes of sentencing are in need of correction. According to the minutes of sentencing, the trial court ordered the defendant to pay a fine of $2,500.00 *plus court costs*. The minutes also indicate that the trial court ordered the defendant to pay $20.00 for clerk's costs. The transcript of sentencing, however, does not indicate that the trial court imposed either of the above costs. According to the transcript, the trial court imposed $250.00 for the cost of prosecution and $250.00 for the cost of investigation, both of which are listed in the minutes of sentencing. No other costs of court are specified in the transcript. The minutes of sentencing should reflect the sentence set forth in the sentencing transcript. Thus, on remand, the minutes of sentencing must be corrected to accurately reflect the sentence set forth in the sentencing transcript.

3

# ASSIGNMENT OF ERROR NUMBER ONE

For his first assignment of error, the defendant asserts that the State failed to "establish knowing possession of marijuana where the defendant purchased a car and drove through Louisiana and only an expert state trooper could have discovered a hidden compartment in the car." In support of his argument, the defendant argues that he did not know that the drugs were concealed in the vehicle, and that they were either already in the car when he purchased it four days earlier, or put there after the purchase by someone else without his knowledge.

In *State v. Touchet,* 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902, this court stated:

> With regard to sufficiency of the evidence, this court set forth as follows in *State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:
>
>> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).
>
>> In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson,* 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d

4

1367.

The defendant in the instant case was convicted of attempted possession of marijuana with intent to distribute in violation of La.R.S. 40:966(A)(1) and La.R.S. 14:27. Louisiana Revised Statutes 14:27 sets forth the definition of "attempt," stating the following:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Louisiana Revised Statutes 40:966(A)(1) states that it is "unlawful for any person knowingly or intentionally . . . [to] possess with intent to produce, manufacture, distribute, or dispense" marijuana.

In *State v. Odle*, 02-226 (La.App. 3 Cir. 11/13/02), 834 So.2d 483, *writ denied*, 03-625 (La. 6/20/03), 847 So.2d 1219, the court noted the discrepancy between the intent requirements of the attempt statute and the controlled dangerous substances possession statutes. The court pointed out that the definition of attempt as found in La.R.S. 14:27 requires a finding of the specific intent to commit the charged offense. However, the controlled dangerous substances statutes only require a finding of general intent to establish guilt. However, this court has previously stated that "compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge." *State v. Charles*, 00-1611, p. 5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied*, 01-1554 (La. 4/19/02), 813 So.2d 420 (citing *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983). Pursuant to *Elaire*, the *Odle* court considered whether the

5

State had presented sufficient evidence to sustain a conviction for the charged offense before determining whether a consideration of the evidence to support the responsive verdict was necessary. *Odle*, 834 So.2d 483. *See also State v. Wilson*, 04-1541 (La.App. 3 Cir. 4/6/05), 900 So.2d 287, *rev'd in part on other grounds,* 05-1486 (La. 2/17/06), 921 So.2d 103 (holding that the court need not consider whether evidence supported second degree battery verdict where the court found that evidence was sufficient to support original aggravated burglary charge).

In the instant matter, there was sufficient evidence for the jury to have found that the State proved beyond a reasonable doubt the essential elements of the offense of possession of marijuana with intent to distribute.

In his appellate brief to this court, the defendant argues specifically that the State did not establish that he knowingly possessed the drugs in the car. Additionally, citing *State v. Major*, 03-3522 (La. 12/1/04), 888 So.2d 798, he argues that "mere presence in a vehicle carrying narcotics is insufficient to prove knowing possession unless it is shown that the defendant has dominion and control within his reach."

To begin, we note that Louisiana courts have consistently held that the prosecution need not demonstrate that the defendant actually possessed an illegal substance to convict, but may instead prove constructive possession. *State v. Trahan*, 425 So.2d 1222 (La.1983). An illegal substance may be constructively considered within a person's possession where the state proves that he had dominion and control over the substance, even if it is not in his physical possession. *State v. Harris*, 94-970 (La. 12/8/94), 647 So.2d 337. "A determination of whether there is sufficient 'possession' of a drug to convict depends on the particular facts of each case." *Major*,

6

888 So.2d at 802. Specifically, this court has noted that in addition to mere presence in the area where the drug is found, other factors should be considered in determining dominion and control including: "his knowledge that illegal drugs are in the area, his relationship with the person found to be in possession, his access to the area where the drugs are found, and his physical proximity to the drugs." *Odle*, 834 So.2d at 490.

In the present case, the evidence at trial established that the defendant was the owner of the vehicle in which the drugs were found. He had purchased the vehicle four days prior to his trip from Texas to Florida. The defendant testified that he had borrowed twelve hundred dollars for a down payment to purchase the vehicle to give to his estranged wife, so that she would move out of his residence because he feared for the safety of his children. However, he stated that he then decided to take the vehicle on a trip to Florida for an unspecified amount of time between three and seven days. Additionally, he stated that he left the children alone with his wife while he was on the trip, despite his concerns over her "harming" the children and using drugs.

The defendant testified that he left with his second cousin, Mr. Porter, to visit an aunt the two men shared, although he stated that he had never personally met the aunt and did not know about her before hearing of her from Mr. Porter. He stated that the men decided to leave at night to avoid traffic. They left from Dallas and drove to Natchitoches, Louisiana, where they stopped between eleven and twelve o'clock at night and rested in a hotel for five or six hours. Mr. Porter, whose driver's license was suspended, drove the vehicle when the men left the hotel the next morning.

At trial, Trooper Dupuis stated that he saw the vehicle traveling eastbound on Interstate 10 and pulled it over because it contained both a permanent license plate as

7

well as a temporary licensing tag affixed to the back window. He stated that the driver of the vehicle, Mr. Porter, could not produce a driver's license. Trooper Dupuis testified that during the course of the stop he determined that the vehicle did have proper registration because it had been purchased only a few days earlier. However, Trooper Dupuis stated that in his experience, many of the cars carrying contraband on the interstate have often been purchased shortly before the trip.

The trooper spoke with both Mr. Porter and the defendant during the course of the stop. Trooper Dupuis testified that the men stated that they were going to visit Mr. Porter's aunt in Florida, although only one specified that they were going to Tallahassee. Additionally, he said that neither man knew exactly where the aunt lived, which made him suspicious. Instead, Mr. Porter said that the men were going to call his grandmother in Colorado to get the directions to his aunt's house in Tallahassee.

He stated that when he approached the passenger window to talk to the defendant, he appeared "very nervous, very fidgety," and he asked the defendant if he was all right due to his nervousness. Trooper Dupuis stated that, after speaking with both the defendant and Mr. Porter, he was sufficiently suspicious to request a search of the vehicle from the defendant. He stated:

> Well, in my own experience any [sic] my training, again, if you are going to travel halfway across the country, you are going to know exactly where you are going, who you are going to stay with, how to get there, and when you are coming back. Plus, along with all the nervousness that I saw on Mr. Strange, I decided to go ahead and ask for permission to search the vehicle.

Trooper Dupuis stated that he did not initially find any contraband in his search of the passenger compartment or trunk of the vehicle. The trooper explained the next steps of his search as follows:

8

> I got on my back and looked underneath, underneath where the bumper is and I noticed some altercations [sic] down there. I continued my search. I noticed that there were scratches there of tool marks. I also noticed that there was a film of dust on the bumper. I am talking about I am looking underneath now, not where you can visibly see. Underneath looking up, there was a film of dust and fresh fingerprints like somebody had just recently put their fingers on there and disturbed the dust. And I figured that there was a compartment in the bumper. So the bumper cover is held on underneath by some little plugs. There is actually a hole in the bumper and the bumper cover plugs in there and that is how it stays on the bumper. Well, I pulled one of those plugs out and I stuck a metal probe inside that bumper and came out [sic] I smelled it, and it was marijuana.

He stated that after probing the bumper, he arrested both men. Trooper Dupuis removed the bumper cover and found a false compartment containing approximately sixty pounds of marijuana packaged in "bricks" wrapped with duct tape.

Trooper Dupuis searched the interior of the vehicle again after finding the marijuana in the bumper. He testified that he found a wallet secreted behind the vehicle's glove box, not inside the box itself. He stated that the wallet contained what was later determined to be approximately a gram of cocaine and a gram of methamphetamine. He testified that the wallet also contained a driver's license belonging to Mr. Porter and stolen checks.

The vehicle was turned over to the Louisiana State Police Narcotics Division, where Trooper Mitchell Fontenot processed the vehicle and handled the evidence. Trooper Fontenot stated that the marijuana appeared to be "green" and "relatively fresh." He explained that marijuana that stays in a sealed package for an extended time period or goes through extreme temperature changes may mold, decompose, or dry out and change to a brownish color.

Considering the entirety of the aforementioned evidence, we find that there was

sufficient evidence presented for the jury to find that the defendant constructively possessed the marijuana found in his vehicle. As the owner of the vehicle, the defendant had complete access to the vehicle, including the bumper area where the marijuana was found. He testified that he picked up the vehicle from the dealership on the Friday before his trip. Trooper Fontenot, a narcotics officer, testified that the drugs were "relatively fresh[,]" and had not yet undergone the changes that would occur had they been there for an extended period of time. The defendant stated that the vehicle sat in the driveway of his home, which was "out in the country[,]" until his trip on Monday evening. The defendant stated that he did not know how the drugs got into the car, or whether they had been there when he purchased it. He testified that Mr. Porter lived nearby, had visited that weekend and would have had access to the vehicle, although he stated that he had three pit bull dogs on his property that weekend.

Although the marijuana was not within his reach as driver or passenger inside the vehicle, this court has previously determined constructive possession of drugs found outside of a vehicle's passenger compartment. In *Odle*, 834 So.2d 483, this court considered the constructive possession factors stated above to determine that cans of cocaine suspended in the vehicle's gas tank were within the constructive possession of the vehicle's driver, Andre Ricardo Shaw, as well as his passenger, David Odle. With regard to Shaw, who owned the vehicle, the court stated:

> Considering the evidence, particularly the fact that Shaw was acting abnormally, gave information to the police that was inconsistent with that given by Odle, was surrounded by a gasoline smell as well as an air freshener smell while in the vehicle, along with the fact that rags containing gasoline were found in the cargo area of the vehicle and his explanation for them was lacking, the fact that the gas tank had recently

been tampered with, was geared to always read full, and there were several cans of cocaine hidden in the gas tank, we find that sufficient evidence was presented to the jury for it to find that Shaw constructively possessed the cocaine.

*Id.* at 492.

The State presented similar evidence in the instant matter. Trooper Dupuis testified that the defendant exhibited nervous behavior during the course of the stop and that Mr. Porter could not produce a driver's license. He also stated that the two men were unclear in their explanations of the destination of their trip, their route of travel or the length of the trip's duration. Additionally, he stated that during his search of the undercarriage of the vehicle, he noticed tool markings on the bumper's bolts and fingerprints in the dust on the bumper cover which caused him to probe the bumper with a metal rod. Further, the defendant stated that he had approximately $800.00 cash in his pocket on the day of the arrest, which he said a friend had paid him for doing some construction work. However, the defendant also stated that he was collecting unemployment because he had been laid off from his job and had to borrow the $1200.00 down payment for the vehicle just four days earlier.

Finally, the Louisiana Supreme Court has stated that the presence of a large amount of drugs in a car may itself be indicative of drug dealing and may suggest that the driver was not an innocent third party, but instead had knowledge of the drugs. *State v. Major*, 03-3522 (La. 12/1/04), 888 So.2d 798 (citing *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 801 (2003) ("The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."); *United States v. Serrano-Lopez*, 366 F.3d 628, 635 (8 Cir. 2004) ("The large

11

quantity of drugs involved is evidence of the defendants' knowledge. Even if the drugs were not owned by the defendants, it is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there."). In *Major*, the defendant's vehicle contained approximately 1.36 pounds of cocaine, which was worth more than $60,000.00.

Comparatively, in the instant matter, the State presented evidence that the marijuana found in the defendant's vehicle weighed 60.92 pounds, which the State asserted would have had a street value of approximately $100,000.00. We find that, as in *Major*, due to the sheer amount and value of marijuana found in the defendant's vehicle, it is reasonable to believe that the defendant, who owned the car, drove it the night before, and was a passenger at the time of his arrest, had some knowledge of the marijuana in the vehicle.

Consequently, based on the totality of the evidence, particularly the defendant's nervous behavior, the tool marks and fingerprints underneath the bumper cover, the recent purchase of the vehicle, and the amount of drugs found in the vehicle's bumper, we find that there was sufficient evidence presented for the jury to find that the Defendant constructively possessed with an intent to distribute the marijuana concealed in the vehicle. This assignment is without merit.

### ASSIGNMENT OF ERROR NUMBER TWO

For his second assignment, the defendant argues that the search of his vehicle was illegal because he was restrained for an unreasonable amount of time after the end of the traffic stop investigation. In his appellate brief to this court, the defendant acknowledges that the Louisiana Supreme Court has already determined that his

display of dual license tags provided Trooper Dupuis with reasonable grounds to stop the vehicle. However, the defendant asserts that after he had provided proper documentation explaining the dual tags, the traffic stop was over, and Trooper Dupuis should have discontinued his drug investigation.

In the instant matter, the Louisiana Supreme Court found that initial stop of the defendant's vehicle and subsequent search of the vehicle were lawful. *State v. Strange*, 04-273 (La. 5/14/04), 876 So.2d 39. Regarding Trooper Dupuis' behavior after the stop, the court stated:

> [T]he [appellate] court correctly found that "once the stop was made, everything that occurred after that was appropriate." Nothing precluded Trooper Dupuis from engaging the defendants in conversation, *State v. Lopez*, 00-0562 (La.10/30/00), 772 So.2d 90, and the officer did not need any degree of reasonable suspicion, as opposed to intuition or "hunch," to ask for, and receive, Strange's consent to search the car. Consent is a well-recognized exception to the warrant requirement, *State v. Owen*, 453 So.2d 1202, 1206 (La.1984); *State v. Packard*, 389 So.2d 56, 58 (La.1980), and rendered lawful the subsequent discovery and seizure of the marijuana hidden behind the Thunderbird's rear bumper. Seizure of the small amount of cocaine and methamphetamine from Strange's wallet was incident to the lawful arrests and was therefore also lawful. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Wilson*, 467 So.2d 503, 517 (La.1985).

*Id.* at 42.

This assignment of error lacks merit.

### CONCLUSION

The defendant's conviction is affirmed. The case is remanded for the trial court to impose a determinate probation supervision fee as mandated by La.Code Crim.P. arts. 895 and 895.1. Further, this court finds the sentencing minutes are in need of correction as far as the assessment of costs. The trial court is instructed to amend the minutes of sentencing to correctly reflect the imposition of costs set forth in the

sentencing transcript.

**CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.**