997 So.2d 707 (2008)
STATE of Louisiana, Appellee
v.
Abelardo SERA, Jr., Appellant.
No. 43,704-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
Rehearing Denied November 25, 2008.
*708 Joey W. Hendrix, Shreveport, for Appellant.
Robert W. Levy, District Attorney, Cary T. Brown, Assistant District Attorney, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The defendant, Abelardo Sera, Jr., entered a guilty plea to the charge of possession of cocaine with intent to distribute, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to object to the denial of his motion to suppress the evidence against him. He was sentenced to serve four years and eight months at hard labor. The defendant now appeals the denial of his motion to suppress. For the following reasons, we affirm the denial of the motion to suppress and the defendant's conviction and sentence.

FACTS
On the morning of March 5, 2005, at approximately 11:30 a.m., Deputy Jim Stephens of the Lincoln Parish Sheriff's Office was patrolling Interstate 20 (I-20). He noticed a tractor/trailer rig traveling east and running on top of the white fog line. He observed the truck actually cross over the fog line a couple of times and it ran over the line onto the paved shoulder. Deputy Stephens observed the truck for approximately two and one-half miles and then pulled the driver over because the vehicle was not being operated in a safe manner. Deputy Stephens asked the driver, Jose Rodriquez, to step out of the truck. Mr. Rodriquez stated that he was driving on the fog line because he was afraid of hitting vehicles in the lane next to him.
*709 The defendant was a passenger in the truck. Mr. Rodriquez told Deputy Stephens that the defendant was his cousin; he was not a co-driver, but was just along for the ride. Deputy Stephens asked for Mr. Rodriquez's driver's license and intended to begin a driver's license check and an arrest record check. He also inspected Mr. Rodriquez's log book.
The log book indicated that Mr. Rodriquez began his trip near Los Angeles, California, and was due to deliver his load in New Jersey at 8:00 p.m. the next night, March 6, 2005. Mr. Rodriquez had traveled from California to New Mexico and then to Longview, Texas. He had not made any log entries for the day of March 5, 2005. Deputy Stephens questioned Mr. Rodriquez as to why he was traveling on I-20 to New Jersey rather than Interstate 40. Mr. Rodriquez stated that the mileage was about the same. Deputy Stephen observed that part of the paperwork dealing with the load was typed and part was handwritten. He stated that he had been trained to view that as a red flag that something was irregular.
Mr. Rodriquez appeared very nervous during his conversation with Deputy Stephens. He did not make eye contact, frequently licked his lips, and folded and unfolded his arms. Deputy Stephens observed that Mr. Rodriquez's carotid artery was standing out and pulsating. Based upon Mr. Rodriquez's behavior, and the facts that he had been in the Los Angeles vicinity, a known drug area, for a couple of days before beginning his trip, his shipping papers were partially typed and partially handwritten, the driver had chosen a southern route and was not going to be able to make his delivery in New Jersey on time and was carrying a passenger, which most trucking companies do not permit, the officer suspected criminal activity.
Mr. Rodriquez was asked to consent to a search of the vehicle. He was informed of his right to refuse the search and his right to suspend the search at any point if he chose to do so. Mr. Rodriquez gasped when the request was made, but consented to the search of the tractor and trailer. Deputy Stephens called for backup.
The defendant was asked to get out of the truck prior to the search. When told that Mr. Rodriquez had given permission to search the truck, the defendant's "eyes got real wide, and he kind of just laid back and took a deep breath." After the arrival of Deputy Tommy Doss, approximately ten minutes after the call for backup, a search of the truck was conducted. Underneath a sleeper in the truck, an unlocked "zip-up" bag containing clothes was discovered. Deputy Stephens opened the bag and found three one-kilo bricks of cocaine stuffed into the legs of pants in the bag. He also found a Glock pistol. The bag contained paperwork belonging to the defendant. The defendant and Mr. Rodriquez were arrested. The defendant was originally charged with possession of 400 grams or more of cocaine. After his arrest, Mr. Rodriquez told law enforcement officers that the bag containing the cocaine belonged to the defendant and that the defendant placed the bag in the truck in Los Angeles at the beginning of the trip.
The defendant filed a motion to suppress the cocaine, tangible evidence, and statements by the accused and co-conspirators. The defendant later filed a supplemental motion to suppress, claiming that the search and arrest were invalid because there were no specific and articulable facts upon which to justify a belief that the defendant was armed and dangerous or in possession of illegal drugs. He also alleged that the detention of the truck driver was illegal and that Mr. Rodriquez's *710 consent to search was not free and voluntary.
After a hearing on the motion to suppress, the trial court denied the motion. According to the court, Deputy Stephens observed a traffic violation, and upon questioning, noted that the driver started out in Los Angeles and was taking an indirect route to New Jersey. On the date of the stop, he was not going to be able to reach his destination in New Jersey by the deadline. The driver was also very nervous. Due to the fact that the driver gave his consent to search the truck, probable cause was not necessary. The court found that the officers could validly search any containers which could contain the object of the search. The court noted that access to the sleeper area was readily available to both the driver and the defendant. The storage compartment where the bag was found was not locked. Finding that the search was lawful and the evidence was not tainted, the trial court denied the motion to suppress. The trial court also denied a motion by the defendant to reconsider its decision.
After reaching a plea agreement, on February 22, 2008, the defendant entered a plea of guilty to the amended charge of possession of cocaine with intent to distribute. The defendant reserved his right to appeal the denial of the motion to suppress. The defendant agreed to the forfeiture of the weapon seized. The prosecution recommended a sentence of four years and eight months at hard labor, noting that the defendant had already satisfied the sentence and should be released. The trial court agreed to the sentence and accepted the guilty plea. The defendant now appeals the denial of his motion to suppress.

CONSENT TO SEARCH
In his first three assignments of error, the defendant attacks the validity of the consent to search in this case. The defendant argues that Mr. Rodriquez's consent to search was invalid due to lack of reasonable suspicion and due to the lack of specific and articulable facts to reasonably justify the search and seizure. The defendant contends that the detention was unconstitutionally prolonged and that the consent to search was not a product of free will. These arguments are without merit.

Discussion
The state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La. C. Cr. P. art. 703(D). The entire record is reviewable for determining the correctness of a ruling on a motion to suppress. A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. Pena, 43,321 (La.App. 2d Cir.7/30/08), 988 So.2d 841.
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. State v. Pena, supra. The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formula articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pena, supra. The court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Terry v. Ohio, supra; State v. Pena, supra.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some *711 sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. State v. Pena, supra. When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. The determination of reasonable suspicion for an investigatory stop, or probable cause for an arrest, does not rest on the officers' subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action. State v. Pena, supra.
In this case, the defendant concedes that the initial traffic stop of Mr. Rodriquez was valid. However, the defendant argues that the detention became unconstitutionally prolonged due to the lack of additional reasonable suspicion. The defendant contends that Deputy Stephens stopped the truck at 11:30 a.m. and then said that he radioed for a driver's license and arrest record check. According to the defendant, Deputy Stephens had no proof that he radioed for the information; he did not receive the results of the request. Approximately 20 minutes after the stop, and following Mr. Rodriquez's consent to search, the drugs and gun were found in the defendant's bag.
During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. La. C. Cr. P. art. 215.1(D). However, La. C. Cr. P. art. 215.1(D) does not preclude a police officer, who may lack reasonable suspicion of other criminal activity, from engaging a motorist in conversation while investigating a routine traffic violation. See State v. Strange, XXXX-XXXX (La.5/14/04), 876 So.2d 39; State v. Cowan, 1999-2888 (La.6/16/00), 763 So.2d 583; State v. Pena, supra. Further, the officer does not need any degree of reasonable suspicion, as opposed to intuition or "hunch," to ask for, and receive consent to search a vehicle. See State v. Strange, supra.
There is no bright-line rule for determining when a lawful detention lasts too long. Each instance must be assessed in view of the surrounding circumstances. The diligence of the police officers in pursuing a means of investigation likely to quickly confirm or dispel their suspicions should be considered. State v. Arnold, 34,194 (La.App. 2d Cir.12/6/00), 779 So.2d 840; State v. Bostic, 26,000 (La.App. 2d Cir.5/4/94), 637 So.2d 591, writ denied, XXXX-XXXX (La.10/14/94), 643 So.2d 159; State v. Thompson, 543 So.2d 1077 (La. App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989). See also United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
In State v. Bostic, supra, this court found that a detention was not unduly prolonged where a defendant was stopped for a traffic violation. During the course of the traffic stop, the law enforcement officer became suspicious of drug activity. Even though the defendant's driver's license and vehicle registration were in order, the officer did not immediately give the items back to the defendant, but asked for consent to search. The defendant freely gave his consent after being detained for about 10 minutes. In Bostic, we distinguished the facts from other cases where the defendant originally refused consent to search and then was unduly detained in order to obtain consent. See and compare *712 State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987).
In United States v. Crain, 33 F.3d 480 (5th Cir.1994), cert. denied, 513 U.S. 1169, 115 S.Ct. 1142, 130 L.Ed.2d 1102 (1995), the defendants, detained for speeding, sought to suppress cocaine discovered in a consensual search of the vehicle. One objection raised by the defendants was that the investigatory detention violated the Fourth Amendment because it was unreasonably long and intrusive. The Fifth Circuit observed that some circuits have hinted that extensive questioning about matters totally unrelated to the purpose of a routine traffic stop may violate the Fourth Amendment. However, the Fifth Circuit noted that it holds that mere police questioning does not constitute a seizure. Further, the court pointed out that when questioning takes place while officers are waiting for the results of a computer check, and does not extend the duration of the stop, the questioning does not violate Terry v. Ohio, supra.
In the present case, it is undisputed that Deputy Stephens validly stopped Mr. Rodriquez for a traffic violation. In the course of that investigation, the officer was permitted to engage Mr. Rodriquez in conversation. During that discussion, several factors emerged that caused Deputy Stephens to suspect criminal activity. Mr. Rodriquez started his trip near Los Angeles, an area Deputy Stephens felt was known for drug activity. Mr. Rodriquez had chosen an indirect route to his destination in New Jersey and was not going to arrive there by his deadline. His truck paperwork was partially typed and partially handwritten, a factor Deputy Stephens had been trained to recognize as suspicious. Mr. Rodriquez was carrying a passenger, which Deputy Stephens thought was generally frowned upon by trucking companies. These factors arguably created reasonable suspicion of criminal activity, prompting Deputy Stephens to ask for Mr. Rodriquez's consent to search the truck and trailer. However, even if these factors did not rise to the level of reasonable suspicion, Deputy Stephen did not err in asking Mr. Rodriquez for consent to search. As stated above, State v. Strange, supra, holds that reasonable suspicion is not necessary to ask for and receive valid consent to search.
The detention was not unduly prolonged. The defendant notes that 20 minutes passed between the initial stop at 11:30 a.m. and the discovery of the drugs. Deputy Stephens suspected criminal activity beyond the original traffic stop. He called for backup. The record reflects that at least 10 minutes of that delay were spent waiting for backup to arrive before the search began. We also note that Mr. Rodriquez was asked for his consent to search and was told that he had the right to refuse or to suspend the search at any time. He gave his consent the first time he was asked and maintained his consent when asked again after backup arrived. At no time did Mr. Rodriquez withhold his consent to search.
The facts of this case are distinguishable from State v. Bunnell, supra, where a driver initially refused consent to search and was then detained until he finally relented and allowed a search. Further, as in State v. Bostic, supra, the fact that Deputy Stephens may have retained Mr. Rodriquez's driver's license and other paperwork does not vitiate his consent to search. Under these circumstances, the officers did not exceed the time necessary for a reasonably diligent and legitimate investigation of their suspicions. We do not find that Mr. Rodriquez's consent to search *713 was vitiated by an illegal detention.[1]
Tied to his argument that the consent to search was invalidated by the prolonged detention, the defendant urges that Mr. Rodriquez's consent to search was not a product of free will. He contends that no traffic citation was issued to Mr. Rodriquez, he was asked to sit in the deputy's vehicle while Deputy Stephens retained his driver's license and other paperwork, and that no attempts were made to determine Mr. Rodriquez's level of education and intelligence.
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Bostic, supra. While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove the consent was freely and voluntarily given. Voluntariness is a question for the trier of fact to be determined by the totality of the circumstances. The trial court's finding is to be given great weight upon appellate review. State v. Bostic, supra. See also State v. Crews, 28,153 (La.App. 2d Cir.5/8/96), 674 So.2d 1082.
In the present case, the record shows that the consent to search was freely and voluntarily given by Mr. Rodriquez. Prior to the search, he was informed twice of his right to refuse to consent to the search, as well as his right to terminate the search at any time. Deputy Stephens said that Mr. Rodriquez appeared to understand and comprehend the information and acknowledged that he understood his rights with respect to the search. There is no showing of excessive coercion or undue influence imposed upon Mr. Rodriquez at the time he consented to the search of the truck. He was not unduly detained or pressured into giving consent. The trial court's finding that the consent to search was freely and voluntarily given is supported by the record and is correct.

SEARCH OF THE DEFENDANT'S BAG
The defendant argues that Mr. Rodriquez did not have the authority to consent to the search of the defendant's baggage to which the defendant had a reasonable expectation of privacy. He also argues that there were no exigent circumstances for the warrantless search of his luggage. These arguments are without merit.

Discussion
In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court considered the validity of a search of an automobile. In that case, a vehicle was stopped for a traffic violation. Six men were riding in the vehicle. When the driver could not produce a driver's license, one of the passengers stated that the car belonged to his brother. The officer asked for and received consent from that passenger to search the car. Wadded up under a rear seat were checks stolen from a business that were linked to Bustamonte, who *714 was a passenger in the vehicle. The evidence was used against Bustamonte after the denial of a motion to suppress.
The Supreme Court considered the question of what the prosecution must prove to demonstrate that consent to search was voluntarily given. The Supreme Court found that when the subject of a search is not in custody and the state attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Schneckloth v. Bustamonte, supra.
In Bustamonte, the Supreme Court found that the consent was voluntary and upheld the defendant's conviction. The Supreme Court did not consider the fact that someone other than the defendant gave the consent to search which yielded information used against the defendant.
In the context of consent by third persons to searches of property, the United States Supreme Court has stated that consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Shumaker, 40,275 (La. App. 2d Cir.10/28/05), 914 So.2d 1156.
This common authority stems not so much from one's property interest, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. United States v. Matlock, supra. When the facts do not support the finding of actual authority, a search is reasonable within the meaning of the Fourth Amendment if the consent giver apparently has actual authority. State v. Shumaker, supra. Said another way, the consent to search given by a third person is valid if, at the time of the search, officers reasonably believed that the person consenting possesses common authority over the premises, even if he does not. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).
In this state, the issue of whether the consent to search a vehicle can extend to the luggage of a passenger was considered in State v. Rawls, 552 So.2d 764 (La.App. 1st Cir.1989). In Rawls, the defendant was a passenger in a car driven by another individual. The driver was pulled over for following too closely behind another vehicle. Upon questioning, the officer became suspicious of additional illegal activity and obtained consent to search the vehicle from the driver. No contraband or weapons were found in the passenger compartment. However, the trunk was also searched and a luggage bag was opened and found to contain a large amount of marijuana. The defendant later stated that the bag containing the drugs belonged to him.
In seeking to suppress the evidence in Rawls, supra, the defendant argued that the driver's consent to search did not extend to the warrantless search of the defendant's belongings in the trunk of the vehicle. The first circuit rejected that argument, finding that the defendant was *715 occupying a vehicle with another party who consented to the search. The court reasoned that the owner of a vehicle has the authority to consent to a search thereof. In the absence of ownership, the operator of a vehicle has the authority to consent to a search. In Rawls, because neither the driver nor the defendant objected at the time to the search of the luggage contained in the trunk of the vehicle, the motion to suppress was properly denied. The court noted that, at no time during the initial investigation did the defendant assert an ownership or possessory interest in the luggage contained in the trunk of the vehicle, nor did he attempt to limit the scope or terminate the search. The court also noted that the fact that the defendant owned the luggage in the trunk of the vehicle was not established until the defendant made inculpatory statements after the search.[2]
The United States Fifth Circuit Court of Appeals has, on several occasions, addressed the constitutionality of the search of a passenger's luggage when the driver of a vehicle consents to a search of that vehicle. In United States v. Jaras, 86 F.3d 383 (5th Cir.1996), an officer stopped a vehicle on suspicion that the driver was intoxicated. The defendant was a passenger in the car. During questioning, the officer became suspicious of drug activity and asked the driver for permission to search the vehicle. The driver gave his consent. No drugs were found in the passenger compartment of the vehicle. The officer then searched the trunk and found a garment bag and two suitcases. The driver claimed ownership of the garment bag, but said that the suitcases belonged to the defendant. The defendant did not claim ownership of the luggage and stated that he did not know what was inside. Upon opening the bags, law enforcement officers discovered a large quantity of marijuana. The defendant was convicted of possession of marijuana with intent to distribute. The defendant appealed the denial of his motion to suppress.
The Fifth Circuit noted that there was no probable cause in that case and the validity of the search turned on the effectiveness of the consent to search. The Fifth Circuit found that the defendant had a reasonable expectation of privacy as to his suitcases and for the search to be valid based upon the driver's consent, the prosecution had to demonstrate that the driver had actual or apparent authority to consent to a search of the luggage.
As discussed above, a finding of actual authority requires proof that the consenting party and the party challenging the search mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search. United States v. Jaras, supra.
In Jaras, the court found that the government did not prove actual authority because it failed to prove joint access or control. The fact that the suitcases were contained in the trunk of the car was insufficient to show joint control. The court also found that the government failed to demonstrate that the driver had apparent authority to consent to the *716 search of the suitcases, a finding which would require proof that the searching officers reasonably, though erroneously, believed that the person who consented to their search had authority to do so. The court specifically noted that the driver clearly informed the officer that the two suitcases did not belong to him and that they belonged to the defendant. This information placed the officer on notice that the driver's consent to search did not extend to the luggage. The statement established that the driver did not have authority to consent to a search of the suitcases and any reliance on the driver's consent was unreasonable.
In Jaras, the court noted that the officer did not ask the defendant for consent to search and there was no evidence that the defendant was present when the driver gave his consent to search the vehicle. Based on these factors, the court rejected the argument that the defendant's silence or failure to object implied his consent to the search. Therefore, the court suppressed the evidence against the defendant.[3]
However, the ruling in United States v. Jaras, supra, has been distinguished in other Fifth Circuit cases based upon the facts. In United States v. Navarro, supra, an officer stopped a vehicle for a traffic violation. The defendant was a passenger in the vehicle. The officer became suspicious of drug activity and obtained consent to search the vehicle from the driver. Drugs were found in a bag that the defendant had been leaning on. The defendant was convicted of drug offenses arising from the seizure of the drugs. On appeal, he objected to the denial of his motion to suppress the drugs, claiming that the driver did not have actual or apparent authority to consent to the search of his bag. Citing United States v. Jaras, supra, he contended that the driver's consent to search did not extend to his bag.
The Fifth Circuit found that the detention and consent to search were valid. The court further concluded that the driver gave a general consent to search the entire vehicle, including the luggage contained therein. There was no indication here, as there was in Jaras, that the driver told the officer that the luggage in the vehicle was not his. The court noted that the bag was on the back seat of the car in plain view and that neither the driver nor the defendant objected to the search. The Fifth Circuit held that the driver's consent included the consent to search the bag containing the drugs and that the holding in Jaras did not prohibit the officer's search of the bag. See also United States v. Freeman, 482 F.3d 829 (5th Cir.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 192, 169 L.Ed.2d 130, and ___ U.S. ___, 128 S.Ct. 291, 169 L.Ed.2d 140 (2007), affirming the denial of a motion to suppress, finding that one occupant of a train sleeper car gave valid consent to search, which included the other occupant's backpack.
In United States v. Crain, supra, the Fifth Circuit affirmed a denial of a motion to suppress drugs found in a consent search of a vehicle. One defendant borrowed a car from a family member, but let a friend drive. Another passenger was also in the vehicle. Officers stopped the vehicle for a traffic offense and obtained consent to search from the driver. Drugs were found in a bag under a car seat. One defendant claimed that the evidence should be suppressed because the driver did not have sufficient authority over the vehicle to consent to the search. The Fifth Circuit found that a person who has joint *717 control over an automobile may give valid consent to its search. The court also rejected the argument that the officers exceeded the scope of the consent by opening the bag. The court found that the consent to search included the contents of the vehicle.
In United States v. Anderson, 859 F.2d 1171 (3d Cir.1988), the United States Third Circuit Court of Appeals held that a driver's consent to search a vehicle applied to the passenger's bags in the trunk of the car. The Anderson court concluded that neither the driver nor the passenger owned the vehicle and therefore each had common authority over the vehicle and the trunk. Either could validly consent to a search thereof. Further, the passenger was found not to have a unique expectation of privacy in an area which is shared with others such as the trunk of a car. The court also observed that, while the vehicle was being searched, the passenger stood by and watched without objection. According to the court in Anderson, such behavior was completely inconsistent with the contention that the passenger retained an expectation of privacy.
In the present case, the search of the defendant's bag was conducted pursuant to a valid consent to search the truck in which he was riding. Mr. Rodriquez, the driver of the truck, had actual authority to consent to the search of the vehicle and its contents. The bag containing the drugs was located in the sleeper portion of the truck. Both the defendant and Mr. Rodriquez had access to the bag, and the bag was not locked. Therefore, Mr. Rodriquez's consent to search included all containers in the truck and trailer. Unlike the facts in Jaras, in the case sub judice, the defendant was informed that the vehicle was about to be searched. Neither he nor Mr. Rodriquez stated that the bag belonged to the defendant. Where there was no limitation on the scope of the search and no indication that the bag belonged to the defendant and not Mr. Rodriquez, the officers possessed a reasonable belief that Mr. Rodriquez had authority to consent to the search of all containers in the vehicle, including the defendant's bag.
The officers acted reasonably in searching the truck and the containers and bags contained therein pursuant to the consent to search. Where the defendant was aware that the truck was about to be searched and remained silent, not seeking to limit the scope of the search to exclude his luggage, he cannot now be heard to complain that the search violated his rights. As in United States v. Navarro, supra, and United States v. Crain, supra, we find that the consent to search in this case extended to the defendant's bag. The trial court did not err in denying the motion to suppress.[4]

CONCLUSION
For the reasons stated above, we affirm the denial of the defendant's motion to suppress the evidence against him. We also affirm his conviction and sentence.
AFFIRMED.
STEWART, J., concurs in result only.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] The United States Fifth Circuit Court of Appeals holds that, even if a detention is unreasonable, a valid consent to search cures any Fourth Amendment violation that may have occurred. United States v. Kelley, 981 F.2d 1464 (5th Cir.1993), cert. denied, 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993); United States v. Navarro, 169 F.3d 228 (5th Cir.1999), cert. denied, 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999) and 528 U.S. 845, 120 S.Ct. 312, 145 L.Ed.2d 99 (1999).
[2] See also State v. Williams, 38,379 (La.App. 2d Cir. 11/25/03), 858 So.2d 878, writ denied, XXXX-XXXX (La.3/12/04), 869 So.2d 807, finding that a driver and passenger had common authority over a vehicle and the passenger could give valid consent to search the vehicle after the driver refused. In Williams, this court found that the facts established both probable cause and valid consent to search.
[3] Similarly, in United States v. Infante-Ruiz, 13 F.3d 498 (1st Cir.1994), there was no valid consent to search a passenger's briefcase in the trunk of a car where the driver who gave consent to the search stated that the briefcase belonged to the passenger.
[4] As stated above, in the present case, there was a valid consent to search the vehicle as well as the bag found inside the truck. Consent is a valid exception to the warrant requirement. There was no need for a showing of exigent circumstances to uphold the constitutional validity of the search.