STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1313

STATE OF LOUISIANA

VERSUS

ROBERT ALLEN SNELLING

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. 391-08
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.

Genovese, J., concurs in the result.

**CONVICTION AFFIRMED; REMANDED FOR ESTABLISHMENT OF PAYMENT PLAN.**

Bennett R. LaPoint
Assistant District Attorney
P. O. Box 1388
Jennings, LA 70546
(318) 824-1893
Counsel for Appellee:
State of Louisiana

G. Paul Marx
Attorney at Law
P. O. Box 82389
Lafayette, LA 70598-2389
(337) 237-2537
Counsel for Defendant/Appellant:
Robert Allen Snelling

**Michael Cade Cassidy**
**District Attorney - 31st Judicial District Court**
**P. O. Box 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**GREMILLION, Judge.**

Defendant, Robert Allen Snelling, was driving east on Interstate 10, towing a boat between Houston, Texas, and Chattanooga, Tennessee. He was stopped for a traffic violation in Jefferson Davis Parish by Steven Vincent, a trooper with the Louisiana State Police, Troop D. After receiving consent to search Defendant's vehicle, the trooper located several pounds of marijuana hidden in the engine compartment of the boat.

Defendant was charged by bill of information with one count of possession of a controlled dangerous substance with intent to distribute, a violation of La.R.S. 40:966(A)(1). Defendant filed a motion to suppress evidence which was denied by the trial court. Defendant pled guilty as charged, while reserving his right to appeal the trial court's denial of his motion to suppress the evidence. Defendant was sentenced to five years at hard labor, with all but two years suspended, and three years supervised probation upon release from custody.

Defendant now alleges that the trial court's denial of his motion to suppress the evidence was in error. We find that Trooper Vincent articulated sufficiently objective facts to support his suspicions that Defendant was involved in continuing criminal activity and the detention was of a reasonable duration in which to resolve his suspicions. Moreover, Defendant consented to a search and his consent resolves any issue of whether there was an illegal detention.

As a condition of probation, the trial court ordered Defendant to pay a $2,000 fine, $50 to the Drug Education and Treatment Fund, $250 to the "Southwest Crime Lab," and court costs. However, the trial court failed to establish a payment plan for the payment of the fine, fees, and costs. When the fine, fees, and court costs are

1

imposed as conditions of probation, but the trial court is silent as to the mode of payment, this court requires a specific payment plan be established. *See State v. Wagner*, 07-127 (La.App. 3 Cir. 11/5/08), 996 So.2d 1203 and 07-128 (La.App. 3 Cir. 11/5/08), 996 So.2d 1208. Therefore, we remand this case to the trial court for establishment of a payment plan for the fine, fees, and court costs. We note that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597.

## ASSIGNMENT OF ERROR

Defendant asserts in his lone assignment of error that the trial court erred when it denied his motion to suppress the evidence. Defendant argues that the trooper's traffic stop was a pretext to search for drugs, that once the traffic stop was resolved the trooper did not have additional reasonable suspicion of continuing criminal activity such that allowed further detention, and that there was no valid consent to search the boat. Therefore, for these reasons, the search of the boat was illegal, and the evidence should have been suppressed.

> The state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La. C. Cr. P. art. 703(D). The entire record is reviewable for determining the correctness of a ruling on a motion to suppress. A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. *State v. Pena*, 43,321 (La.App. 2d Cir.7/30/08), 988 So.2d 841.
>
> The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. *State v. Pena, supra.* The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formula articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pena, supra.* The court must determine whether the officer's action was justified at its inception, and whether

2

it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio, supra*; *State v. Pena, supra.*

> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. *State v. Pena, supra.* When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. The determination of reasonable suspicion for an investigatory stop, or probable cause for an arrest, does not rest on the officers' subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action. *State v. Pena, supra.*

*State v. Sera,* 43,704, pp. 5-6 (La.App. 2 Cir. 10/29/08), 997 So.2d 707, 710-11.

At the suppression hearing, Trooper Vincent testified as follows: On the night of May 11, 2008, a few minutes before midnight, he was patrolling Interstate 10 in Jefferson Davis Parish, traveling east, when he observed a Chevrolet Tahoe pulling a trailer and boat also traveling east. He noticed that the trailer did not have a license plate. As he watched the vehicle, he saw the vehicle drift right of the fog line for about ten feet.

Trooper Vincent activated his lights and the vehicle immediately pulled over. Trooper Vincent testified that as soon as he activated the signal, the on-board camera turned on automatically. He said Defendant provided him with a valid Tennessee driver's license. Trooper Vincent advised Defendant he was being stopped because he had no license plate on his trailer and because of the "lane usage violation." Defendant told Trooper Vincent the trailer was registered in Tennessee and that a plate was not required there, which, according to Trooper Vincent, was correct. Defendant told Trooper Vincent that he was on his way to Tennessee to visit his mother for Mother's Day. He said that he owned a trucking business in Houston.

3

When Trooper Vincent asked him for his Houston address, "he got nervous, and he said, 'huh, I don't know, off some interstate highway. I paid cash for it.'" Trooper Vincent said Defendant told him that he owned two houses, one in Houston and one in Tennessee, and his driver's license had his Tennessee address.

Trooper Vincent testified that Defendant was acting very nervous. "His carotid artery was pulsating. His–he kept grooming his hair, rubbing his hair, scratching his head, moving around." Moreover, according to Trooper Vincent, Defendant would not maintain eye contact. Trooper Vincent said he ran a quick check on Defendant's driver's license and found that he had a domestic abuse charge several years ago, but there was no drug activity on his record. However, he decided he was going to ask for consent to search and while he was sitting in his vehicle he filled out a consent form for Defendant to sign. Trooper Vincent stated he made this decision based on the fact Defendant was so nervous that "[h]is hands were shaking." Trooper Vincent further thought it was suspicious that Defendant was traveling from Houston to Chattanooga, towing a boat, to see his mother when he would arrive the day after Mother's Day.

Trooper Vincent stated that, as he was filling out the consent form, two troopers arrived as back-up. When Trooper Vincent presented the consent form to Defendant, "[h]e waived his hands in the air and said 'I have no problem with that,'" and signed the form. Trooper Vincent and another trooper searched the vehicle first, then moved to the boat. Once inside the boat, they could smell a strong odor of marijuana from two vents in the engine compartment. Subsequently, they located several pounds of marijuana.

4

After hearing the trooper's testimony and reviewing the video, the trial court rendered its decision. Denying the motion to suppress the evidence, the trial court stated:

> All right. The Court, as I stated previously, has looked at the video in–in detail. The Court finds that the video was not of very good quality. I tried to turn it up as loud as I could and I was not able to hear much of the audio on that video.
>
> Now, let's talk about was there probable cause for the stop. There's probable cause for the stop. He had the–no license tag, so the officer had the right to stop him. The Court finds that–I'm not going to follow Vaughn in this matter. I'm going to follow the Third Circuit that affirmed the case here and find that there is probable cause for the improper lane usage. The motion to suppress is not to decide whether or not he's guilty of improper lane usage. It's only whether or not there's probable cause.
>
> The next thing that we had to do is was he unreasonably detained? The officer was doing his job asking the right questions over the length of time. Now, it all gets back to the officer's testimony. I'm going to state for the record that I found Officer Vincent to be very credible. There was a lot of conversations with the defendant that were not on the videotape that the officer referred to, and I'm going to rely on the officer's impression and find that there was reasonable suspicion for him to detain the defendant as he did. The defendant was presented a consent to search, which the officer testified to that he went over the rights that the individual had to sign or not sign the consent to search. It was not contradicted, and it was filed into the record, and, therefore, the Court's going to find that the consent to search was knowingly and intelligently done, and that based on that, the Court is going to deny the motion to suppress.

## TRAFFIC STOP

Defendant asserts in brief that the traffic stop was in fact a random stop solely for the purpose of looking for contraband. He argues that "[t]here is nothing in touching the fog line a single time which provides a basis for any suspicion of drug possession, and authorizing this kind of stop means that any motorist may be stopped at any time for no reason." At the hearing, Trooper Vincent testified that the right

5

side tires crossed over the fog line for about a distance of ten feet, one time. He testified that, in his opinion, this was sufficient to establish a traffic violation.

In support of his argument that the stop was a pretext for looking for drugs, Defendant cites *State v. Vaughn,* 448 So.2d 915 (La.App. 3 Cir. 1984), wherein this court reversed the trial court's denial of the defendant's motion to suppress the evidence based on a very similar factual scenario as the present case. This court stated:

> It is the opinion of this Court that the defendant's actions crossing six inches over the center line and traveling thus for approximately ten feet, even when coupled with the observation of a vehicle swaying within its own lane, does not per se present sufficient facts to establish the requisite reasonable cause which is necessary before a police officer may legally stop a motorist; particularly so, when the police officer followed the defendant for only one and one-half blocks, and further, when defendant's driving presented no evidence of danger to himself or to others.

*Id.* at 916.

However, in *State v. Waters,* 00-356 (La. 3/12/01), 780 So.2d 1053, the Louisiana Supreme Court discussed a first circuit case wherein the court reversed the trial court's denial of a motion to suppress the evidence. The contraband was discovered during a traffic stop initiated after the police officer observed defendant's vehicle veering to the right and making a single contact with the fog line on the side of the road. *See State v. Waters,* 99-407 (La.App. 1 Cir. 11/5/99), 751 So.2d 290, which relied on this court's holding in *Vaughn*, 448 So.2d 915. The supreme court, after discussing the United States Supreme Court's discussion and holding in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769 (1996), stated; "Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an

6

objective basis for lawfully detaining the vehicle and its occupants." *Waters,* 780 at 1056. The supreme court went on to state:

> In *Whren,* the Supreme Court expressly addressed concerns that its objective standard for determining the reasonableness of vehicular stops based on traffic infractions would throw open wide the door to the use of myriad traffic regulations by the police "to single out almost whomever they wish for a stop." *Whren*, 517 U.S. at 818, 116 S.Ct. at 1777. "[W]e know of no principle," the Court observed, "that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." *Id*. We therefore find the violation in the present case no more hypothetical or tenuous than the offense for which the police stopped a second vehicle in *United States v. Smith* after observing an air freshener hanging from the vehicle's rear view mirror in apparent violation of state law prohibiting material obstructions between the driver and the windshield, [*I*]*d.*, 80 F.3d at 219, or the violations in *United States v. Williams,* 106 F.3d 1362, 1364 (7th Cir.1997), in which the police officer observed the defendant's vehicle signal a left turn 30 feet from an intersection instead of the 100 feet required by law, and then stop slightly forward of the stop sign at the intersection, again in violation of state law which required a stop at a point "nearest the intersecting roadway. . . ." Federal and state jurisprudence in this area makes plain that the objective standard of *Whren* "is indifferent to the relatively minor nature of the traffic offense." *Williams,* 106 F.3d at 1365.
>
> Moreover, even if this Court were inclined under other circumstances to adopt a threshold approach to *Whren* below which an observed traffic violation appears too slight or technical to afford a reasonable basis for interfering with a vehicle's freedom of movement, we agree with the trial court in this case that, giving due deference to Corporal Magee's experience in the field, the sudden and inexplicable veering of the Toyota to the fog line at that hour of the morning provided the officer with a "'minimal level of objective justification . . . .'" required for an investigatory stop. *State v. Huntley*, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)). A vehicle need not leave its lane to provide reasonable suspicion by reason of its erratic movements that the driver may be impaired or intoxicated. *See State v. Moran*, 667 P.2d 734, 735 (Ak.App.1983) (observation of defendant's vehicle as it touched the center line of a divided highway and then drifted over to the right hand fog line three times within ½ mile provided reasonable suspicion driver was impaired or intoxicated).

*Id.* at 1057.

Considering the above jurisprudence, in the current case, Trooper Vincent articulated a valid and objective basis for lawfully pulling over Defendant's vehicle, however minor the infraction may have been. *See also, State v. Lewis*, 07-1183 (La.App. 3 Cir. 4/2/08), 980 So.2d 251.

### DETENTION

Defendant next argues that once the issue of the lack of a license plate on the trailer was resolved and Defendant was found not to have a criminal history other than a domestic abuse conviction in 2000, Defendant should have been cited for improper lane usage and allowed to continue on his way.

Louisiana Code of Criminal Procedure Article 215.1(D), in pertinent part, provides:

> During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.

This court discussed "reasonable suspicion" developed during a traffic stop in *State v. Morris*, 03-269, p.10 (La.App. 3 Cir. 9/10/03), 854 So.2d 989, 996, *writ denied*, 03-2853 (La. 10/15/03), 855 So.2d 743, as follows:

> The reasonable suspicion referenced in La.Code Crim.P. art. 215.1(A) is something less than probable cause and something more than a hunch. *State v. Flowers,* 441 So.2d 707 (La.1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). To determine the existence of reasonable suspicion, the totality of the circumstances faced by the law enforcement officers must be considered and the officers must be able to articulate facts that in conjunction with their inferences and the officers' experience give rise to reasonable suspicion. *Id.*

Trooper Vincent testified that Defendant's nervous behavior and the fact that he was towing a boat to Tennessee to see his mother for Mother's Day, which was minutes from being over, made him suspect that Defendant may be involved in

8

additional criminal activity. He stated that Defendant kept running his hands through his hair, scratching his head, moving around, would not maintain eye contact, and his carotid artery was pulsating. He further testified that when he asked Defendant for his address in Houston, Defendant could not tell him, stating only that he paid cash for his house and had a receipt.

Defendant argues that a review of the video tape of the stop contradicts the trooper's testimony that he exhibited nervous behavior. The video began recording at approximately 11:31 p.m. At approximately 11:32, Trooper Vincent called out for Defendant to exit his vehicle. The two stood in front of the trooper's unit for a minute or two and talked. While the audio was bad, the visual was good enough to see that Defendant spoke directly to Trooper Vincent and did not appear to avoid eye contact. Trooper Vincent walked around the boat to check the license plate on Defendant's vehicle and at this time, Defendant scratched his head. Trooper Vincent returned and talked to Defendant again for a minute or two, during which time Defendant scratched his head. Approximately five or six minutes into the video tape, both men walked back to Defendant's car and then returned to stand in front of Trooper Vincent's unit. Trooper Vincent was holding some papers. Trooper Vincent was heard mentioning drugs. Defendant scratched his head again after Trooper Vincent walked back to Defendant's car again for an unknown reason. Trooper Vincent saw him scratch his head only once. Defendant never ran his hands through his hair. As Trooper Vincent sat in his unit checking Defendant's license plate and driver's license, Defendant once rubbed his neck. He did however rub his nose five times during the course of the stop prior to signing the consent form for the search. Otherwise, Defendant stood patiently in front of the trooper's unit for several

9

minutes, watching either Trooper Vincent or traffic as Trooper Vincent filled out paperwork and communicated with dispatch. When the second trooper arrived, Defendant talked with him, smiling and laughing as Trooper Vincent sat in his unit. Defendant did become visibly nervous as Trooper Vincent asked him if he had drugs in the vehicle after the trooper showed him the consent form.

As noted, the audio on the video tape was bad. Most of the conversation was incomprehensible. What Defendant said when asked for his address was inaudible. The only conversation that was discernible to some degree was regarding whether Defendant had drugs at the beginning of the tape and then just before he signed the consent form, and about Defendant visiting his mother the day after Mother's Day. Trooper Vincent presented Defendant with the consent to search form at approximately 11:48 p.m., sixteen minutes after the initial stop.

While discussing whether an investigatory traffic stop became an illegal restraint of a person's liberty, the Louisiana Supreme Court stated:

> "[C]ourts have been unable to develop a bright-line test to determine when police-citizen encounters exceed the bounds of mere *Terry* stops." *United States v. Ienco*, 182 F.3d 517, 524-25 (7th Cir.1999). Because "[t]here is no scientifically precise formula that enables courts to distinguish between valid investigatory stops . . . and other detentions that the law deems sufficiently coercive to require probable cause," *United States v. Zapata*, 18 F.3d 971, 975 (1st Cir.1994), a court inquiring into the nature of a forcible detention must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (citations omitted). A court making this assessment "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.*

*State v. Miller,* 00-1657, p. 3 (La. 10/26/01), 798 So.2d 947, 949.

10

In *Miller*, because the nervous driver did not consent to a search of the vehicle, the officer held her for fifty-four minutes awaiting a drug sniffing dog. The supreme court did not find the wait imposed in Miller as being excessive, noting:

> The trooper immediately reported his deepening suspicions and Officer Thigpen, at home when he received his dispatcher's call, responded promptly, arriving with his dog on the scene 34 minutes later. The stop was approaching an hour at this point but its duration reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper's suspicions without unnecessary delay.

*Id.* at 950.

In the current case, the video does not suggest that Defendant was nervous. Even if he was nervous, in *State v. Alexander,* 450 So.2d 61 (La.App. 3 Cir. 1984), this court stated that nervousness, by itself, was not sufficient to justify a continuing investigation once the reason for the initial stop was resolved, but was a factor adding to a developing reasonable suspicion. During cross-examination, Trooper Vincent admitted that he did not find it unusual for someone to not be able to visit their mother for Mother's Day actually on Mother's Day. Nothing more suspicious occurred. Defendant's license plate and driver's license and the trailer registration were all in order and validated through dispatch. Defendant had a reasonable explanation of where he was from and where he was going. The only criminal matter on Defendant's record was a domestic abuse offense in 2000.

However, most of the questions and answers could not be heard on the video, nor the tone of Defendant's voice. Only Trooper Vincent could see directly into Defendant's eyes, and see whether Defendant's carotid artery was pulsating. Further, it was only sixteen minutes from the initial stop until Defendant signed a consent form, allowing the troopers to search. More problematic to Defendant's case is the fact that

11

he freely consented to the search. An investigating officer does not need any degree of reasonable suspicion to ask for and receive permission to search. *State v. Strange,* 04-273 (La. 5/14/04), 876 So.2d 39.

## CONSENT TO SEARCH

Defendant does not contest the validity of the consent to search itself. The only issue Defendant raises concerning the consent is whether he consented to the search of the boat when he consented to the search of the vehicle. The consent to search form specifically listed only the 1999 Chevrolet Tahoe. Defendant asserts that he "never consented to the search of the boat and the form cannot support any claim that he did so."

> It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States constitutions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Bodley,* 394 So.2d 584 (La.1981)*; State v. Murphy*, 465 So.2d 811 (La.App. 2d Cir.1985). A consent is valid when it is freely and voluntarily given by a person with common authority or other sufficient relationship to the premises or effects sought to be inspected. *Bodley, supra*; *State v. Owens*, 480 So.2d 826 (La.App. 2d Cir.1985), *writ denied,* 486 So.2d 748, *cert. denied,* 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove the consent was freely and voluntarily given. Voluntariness is a question for the trier of fact to be determined by the totality of the circumstances. The trial court's finding is to be given great weight upon appellate review. *State v. Edwards,* 434 So.2d 395 (La.1983); *State v. Brown*, 478 So.2d 600 (La.App. 2d Cir.1985).

*State v. Bostic,* 26,000, p. 6 (La.App. 2 Cir. 5/4/94), 637 So.2d 591, 595-96, *writ denied,* 94-1476 (La. 10/14/94), 643 So.2d 159. Moreover,

> [W]hen officers rely upon consent to justify a warrantless search, they have no more authority than they have been given by the consent. Therefore, any search beyond the permitted intrusion invalidates the voluntariness of the consent given to the extent that the search exceeds the parameters for which the permission was granted.

*State v. Malone,* 39,996, p.6 (La.App. 2 Cir. 9/23/05), 912 So.2d 394, 398.

12

In brief, the State argues that Defendant's assertion that he did not consent to the search of the boat was not supported by "any specific authority" and that "once consent to search is granted to the police, it is generally given a broad interpretation in scope." The State cites *Sera*, 997 So.2d 707, in support of its assertion, stating that in *Sera*, "[t]he Court found that consent to search included all containers found in the truck <u>and trailer</u>. (emphasis added)." In *Sera,* the defendant was riding with his cousin, who was driving an eighteen-wheeler. The rig was stopped for a traffic violation and after being given consent to search the tractor, or cab, by the driver, the police found the defendant's bag in the sleeper compartment of the tractor which contained three kilos of cocaine. The issue was whether consent to search the tractor extended to the luggage of a passenger located in the tractor. After analysis of the facts of the case, the second circuit stated only that the driver of the rig had the authority to consent to a search, which "included all containers in the truck [tractor] and trailer." *Id.* at 717.

However, the State further supports the "broad interpretation" of a consent in the current case by comparison to consent given to the search of a residence, wherein the "residence also encompasses related structures such as a playhouse in the yard. *See State v. Wagster,* 361 So.2d 849 (La. 1978)." In *Wagster*, the issue was whether the father and owner of the residence could consent to the search of his son's van, which was parked in the backyard. The father testified that, when asked, he gave consent to search his van in the backyard, but not his son's van. The officer testified that he obtained consent to search the son's van when he talked to the father. The supreme court held, "[C]onsent to search a residence should, under ordinary circumstances, apply to structure appurtenant thereto used in connection with the main

building, such as a van without wheels resting on blocks, and used as a playhouse as in the case at bar." *Id.* at 855.

In a more recent case, *State v. Irby,* 93-2220 (La.App. 4 Cir. 2/4/94), 632 So.2d 801, 804, *writ denied,* 94-580 (La. 4/29/94), 637 So.2d 461, the fourth circuit discussed whether the language, "my residence or other real estate," contained in a consent to search form included a shed outside the house, as follows:

> In support, it [the State] cites *State v. Roach*, 322 So.2d 222 (La.1975), and *State v. Brouillette*, 465 So.2d 124 (La.App. 4th Cir.1985), where both courts held that the term "premises" used in a search warrant affidavit could be reasonably construed to include the house, the garage, and "other outbuildings which one normally associates with and includes in the word 'premises'", *Brouillette,* at 126, or "any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word 'house' or 'premises'", *Roach,* at 226. In *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987), the Supreme Court set forth four factors to be used to determine the "curtilage" of a house: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."
>
> . . . .
>
> Taking the *Dunn* factors, it appears that the shed would fall within the "curtilage" of the residence. If the only thing this court had to consider was the consent form, the search of the shed would probably have been authorized by the form. Likewise, if the officers had gotten a search warrant for the "premises", the shed probably would have been included within its scope.

In the current case, the consent form Defendant signed stated that he "hereby voluntarily authorize TPR Steven Vincent of the Louisiana Office of State Police to search <u>1999 Chevrolet Tahoe 400 Tan TN Titan 9970</u> and its contents, which are owned or controlled by me. . . ." The boat, secured to the trailer attached to the truck, would qualify as "curtilage" in the same sense as an outbuilding "within close

14

proximity of the house proper that one normally associates with and includes within the word 'house' or 'premises.'" *State v. Roach*, 322 So.2d at 226.

In *State v. Pigford,* 05-477 (La. 2/22/06), 922 So.2d 517, the supreme court addressed an issue of whether the driver of an eighteen-wheeler rig had dominion and control over the drugs found in the trailer such that allowed him to be convicted of the offense of possession with intent to distribute the drugs. In this case, the issue was not whether the defendant's consent to search the tractor extended to the trailer compartment—the defendant had refused the police consent to search the trailer—but whether the drugs could be imputed to him by virtue of the fact he operated the tractor. Noting that private vehicle case law regarding constructive possession of drugs cannot necessarily be applied to drugs found on commercial transport, the supreme court nonetheless stated:

> Defendant's dominion and control over the trailer and access to its contents did not alone establish his guilty knowledge of the marijuana bundle placed on top of the grape pallets. *See State v. Major,* 03-3522 at 8-9 (La.12/1/04), 888 So.2d 798, 803. Nevertheless, guilty knowledge, an essential component of any showing that a defendant has constructive possession of contraband, *i.e.*, dominion and control over it although the contraband is not in his actual possession, *State v. Bell,* 566 So.2d 959, 960 (La.1990); *State v. Sweeney*, 443 So.2d 522, 528 (La.1983), may be inferred from the circumstances of the transaction. *Major*, 03-3522 at 8-9, 888 So.2d at 803; *State v. Goiner,* 410 So.2d 1085, 1087 (La.1982).

*Id.* at 521.

In the current case, the trooper testified Defendant's behavior gave him reasonable suspicion that he was involved in continuing criminal activity. Interstate 10 is a well-known drug route east, the direction Defendant was traveling. When asked, Defendant told the trooper that he was the owner of the trailer and the boat; therefore, he had dominion and control. We find that Trooper Vincent would have

15

been remiss to have not searched the boat, which Defendant admitted he had dominion and control over by virtue of ownership.

Finally, there was no evidence that Defendant attempted to restrict the search, or objected when the troopers approached and then searched the boat. Consent can be limited and revoked at any time, even after a search has commenced. *Malone,* 912 So.2d 394. *See also, State v. Rawls*, 552 So.2d 764 (La.App. 1 Cir. 1989), wherein the first circuit noted that because neither the driver nor the defendant, who was the passenger, objected to the search of the passenger's luggage in the truck, the trial court was correct in denying the defendant's motion to suppress the evidence that was located in his luggage.

When Defendant gave consent to search the vehicle, the consent extended to the boat, which was attached to the vehicle. As in a shed, which is "curtilage" because of its proximity to a house and under the dominion and control of the owner of the residence, consent to search the boat firmly attached to the vehicle and under the dominion and control of Defendant, was within the scope of the consent to search the vehicle.

### CONCLUSION

Ultimately, this matter turns on the simple fact that Defendant gave consent to search the vehicle. Considering Defendant's consent to search, we affirm Defendant's conviction. However, this case is remanded to the trial court for establishment of payment plans for the fine, fees, and court costs, noting that the plans may either be determined by the trial court or by Probation and Parole, with approval by the trial court.

**CONVICTION AFFIRMED; REMANDED FOR ESTABLISHMENT OF PAYMENT PLAN.**

17