736 So.2d 951 (1999)
STATE of Louisiana, Appellee,
v.
Priscilla Lewis SHAW, Appellant.
No. 31,786-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*952 Louisiana Appellate Project by J. Wilson Rambo, Monroe, James E. Beal, Jonesboro, Counsel for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Douglas Leon Stokes, Jr., Assistant District Attorney, Counsel for Appellee.
Before NORRIS, KOSTELKA and DREW, JJ.
DREW, J.
Defendant pleaded guilty to possession of cocaine, a violation of La. R.S. 40:967(C), and reserved her Crosby rights relative to review of an adverse ruling on her Motion to Suppress. Finding no merit to her appeal, we affirm.

FACTS
Deputy Andy Brown of the Jackson Parish Sheriffs Office, while on routine patrol, pulled over a motorist named Theo Shively after Shively's vehicle had abruptly changed lanes and nearly struck Deputy Andy Brown's vehicle. Priscilla Lewis Shaw, defendant herein, was Shively's guest passenger at the time. After stopping in a parking lot adjacent to the roadway, both Shively and Shaw immediately exited the Shively vehicle. As Deputy Andy Brown explained to Mr. Shively why the stop was made, Deputy Scott Brown, J.P.S.O., arrived at the scene to assist Deputy A. Brown.
While Deputy A. Brown requested and was granted consent by Mr. Shively to search his vehicle, Deputy S. Brown observed Shaw standing next to the passenger door of the Shively vehicle. Deputy S. *953 Brown requested Shaw to step over to his (Deputy Scott Brown's) patrol unit, which she did. Deputy S. Brown estimated he was about five feet from Shaw and about five feet from his own patrol unit. Knowing of Shaw's drug history, noticing that both of her hands were in her pockets, and further observing that one of her hands was balled into a fist, Deputy S. Brown inquired "Would you empty your pockets?" She promptly complied. The deputy testified at the hearing of the motion that he suspected cocaine, not a weapon, at the time of his request.
Shaw placed a large wad of cash on Deputy S. Brown's vehicle. This officer saw no contraband and began the process of returning the money to Shaw. Deputy S. Brown patted her pockets to make certain they were empty before he returned the money. About this time, Jackson Parish Deputy Paul Trosclair arrived and spotted "two flakes of a white substance" on the hood of the patrol car where the cash had been placed. Deputy Trosclair brought this to the attention of Deputy S. Brown, who took a flake over to Deputy A. Brown for a field test, which proved positive for cocaine. Deputy S. Brown then found on the ground more crack cocaine where Shaw's right leg had been. The defendant was placed under arrest for possession of a Schedule II Controlled Dangerous Substance.

DISCUSSION
On appeal, Shaw asserts that the trial court erred in failing to grant her motion to suppress. Specifically, she objects that she was unlawfully detained, that she was illegally searched, and that she was not advised of her Miranda warnings prior to the seizure of the contraband. Due to the foregoing complaints, Shaw contends her subsequent felony arrest was illegal.
La.C.Cr.P. art 703 places the burden on the state to prove the admissibility of physical evidence seized without a warrant. The factual determinations of the district court in deciding a motion to suppress are entitled to great weight because of the district court's great ability to assess the credibility of witnesses. State v. Dixon, 30,495 (La.App.2d Cir.2/25/98), 708 So.2d 506.

Illegal Search
No illegal search occurred in this matter. In fact, no search took place. Had Deputy Scott Brown commanded or ordered Shaw to empty her pockets, he would have conducted an illegal/unreasonable search. This well-trained officer requested (as opposed to directed, ordered, instructed or demanded) that she empty her pockets. No guns were drawn; no threats were made; no repercussions were threatened. Shaw immediately and voluntarily emptied her pockets. After she responded to Deputy S. Brown's request, the contents of her pockets and balled-up fist were in plain view. The contraband spotted by Deputy Trosclair was then subject to immediate seizure as contraband in plain view. Harris v. U.S., 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). Shaw was never actually searched, but voluntarily consented to display the contents of her pockets to the requesting officer and his fellow deputies who then properly seized the flakes and rock of cocaine in plain view.
The deputy testified that he did not believe that Shaw possessed a weapon; he was honest in expressing no fear for their safety. Under those circumstances, he lacked the right to frisk Shaw for a weapon, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, Deputy S. Brown did suspect that Shaw possessed drugs, because of:
1. her previous drug record;
2. her cruising with an older man, apparently a trait of local Jackson Parish drug dealers; and
3. her demeanor, particularly including her hands.
*954 Deputy S. Brown did not have the probable cause required to conduct a lawful involuntary search of Shaw. Therefore, this deputy simply asked Shaw to empty her pockets and showed no force, duress, pressure, or any other indicia of compulsion. She voluntarily complied. The record is devoid of any testimony from Shively or Shaw or any bystanders about any force, threats, compulsion or violence directed at Shively and Shaw to get them to comply with the requests of the officers. Only the three peace officers testified. The record amply supports the learned trial judge's conclusion that Deputy S. Brown requested that Shaw empty her pockets and that her immediate compliance was completely voluntary.
Coincidentally, another Jonesboro case, this circuit's State v. Poland, 30,789 (La. App.2d Cir.6/24/98), 715 So.2d 688, clearly states the law relative to a defendant responding to the request of a peace officer (though in Poland, supra, the reason for the request was officer safety):
The critical aspect of that inquiry turns upon whether a reasonable person would feel free to decline the requests or otherwise terminate the encounter with the law enforcement personnel. Put another way, taking into account all the surrounding circumstances, the court must determine whether the police conduct would have communicated to a reasonable person that he was not at liberty to disregard the officers and go about his business. Although most citizens will respond to a police, solicitation, and do so without being told they are free to decline, that fact hardly eliminates the consensual nature of the response. Furthermore, a defendant's subjective belief is irrelevant; the encounter should be judged from the viewpoint of a reasonable, innocent person.
* * *
The determination of voluntariness depends upon the overall facts and circumstance of the particular case. On appellate review of such an issue, the trial judge's factual determination is entitled to great weight. (Citations omitted.)

Illegal Detention
Shaw argues that, even if she voluntarily complied with the deputy's request that she empty her pockets, her consent was invalid because she was being illegally detained. When made during/after an illegal detention, a voluntary consent to search is valid only if it was the product of free will and not the result of an exploitation of a previous illegality. State v. Raheem, 464 So.2d 293 (La.1985). All that is required to detain an individual or a motorist is reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and State v. Church, 538 So.2d 993 (La.1989). Deputy A. Brown had more than enough reasonable suspicion of criminal activity [Careless Operation, La. R.S. 32:58, and Failure To Use Turn Signal, La. R.S. 32:104(D) ] by which to stop Shively's automobile. Shively nearly caused a traffic accident with Deputy Brown's unit. The initial stop of the vehicle containing Shively and his guest passenger, Shaw, was legal.
In support of her contention that she was illegally detained, defendant cites portions of the testimony of Deputy Scott Brown (R. Pg.54):
Q (Defense counsel): [W]ell, she was detained, was she not? I mean the car was being searched. She could've [sic] leave, could she?
A: I wouldn't think she could've left at that point. No.
Q: Okay and while she was being detained, you said would you empty your pockets and did not tell her she had the right not to empty her pockets?
A: That's correct.
On redirect examination, the deputy said (R. Pg.57):
Q: [W]hen you were asked could she leaveanything to prevent her from *955 just walking away, saying I don't want to wait for the search? I'm going to leave?
A: Yes, because Deputy Andy Brown was searching the vehicle and at that point, if he had found somethingI mean he was conducting an investigation of his own and the twothere were two parties to that vehicle, so she probably couldn't have left at that moment as long as Deputy Andy Brown was still conducting this traffic stop that he was conducting. If she would've wanted to have left at that point, no, but given five minutes or so then she probably could have. Yes.
The deputy's foregoing testimony is speculative and concerns a scenario that did not occur. Police need reasonable suspicion that an individual has been, is currently or is about to commit a crime before they may detain a person to investigate her conduct. La.C.Cr.P. art. 215.1. In some circumstances, they may request that a passenger in a vehicle identify herself even without this level of suspicion. See State v. Landry, 588 So.2d 345 (La. 1991). In point of fact, Deputy S. Brown articulated facts which formed the basis for his reasonable suspicion that the defendant was engaged in criminal conduct.
Despite the deputy's speculation to the contrary, there is no evidence that the deputies actually detained Shaw. She was present at the scene by virtue of her status as a passenger in the car driven by Shively. None of the deputies indicated that Shaw refused to speak to them or tried to leave the scene. She was not physically restrained nor was there evidence that the deputies ordered her to remain. Because the defendant was never detained at the scene, her subsequent consent was clearly valid.

Absence of Miranda Warnings Prior to Seizure of Contraband
Defendant makes much of the fact that the officers did not administer Miranda warnings [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] to Shaw prior to the discovery of the contraband and relies upon an artificially strict reading of La.C.Cr.P. art 218.1, which tracks the first sentence of Article I, Section 13 of our Louisiana Constitution of 1974, to-wit:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination his right to the assistance of counsel and, if indigent, his right to court appointed counsel. (Emphasis added)
Under the reasoning in Poland, supra, what was in Shaw's mind would not be determinative of the voluntary or involuntary nature of this situation. Whether a detention is brief and investigative (Miranda warnings not required) or custodial (Miranda warnings required) is determined by whether a reasonable person, standing in Shaw's shoes, would have thought she was free to go. The type of detention required to mandate Miranda in La.C.Cr.P. art. 218.1 has been interpreted jurisprudentially as "custodially detained." In State v. Alford, 29,343 (La.App.2d Cir.5/9/97), 694 So.2d 1162, writ denied, 97-1844 (La.11/14/97), 703 So.2d 1292, the court held that Terry stops which are even more intrusive than the stop to which Shaw was subjected are not subject to the Miranda requirements.
Certainly, under these facts, and applying this law, the interaction was not even a detention; it was wholly voluntary. Assuming arguendo, that the encounter was a detention, it was investigative, not custodial, pretermitting the need for Miranda, and the resulting seizure is justified since made under plain view. Further, Miranda relates to communications, not physical evidence produced upon polite request, without the defendant saying a word.
*956 Defendant Shaw's substantial reliance upon this court's State v. Tucker, 604 So.2d 600 (La.App. 2d Cir.1992) is misplaced. The Louisiana Supreme Court granted writs and reversed our previous suppression of a portion of the drugs therein. See State v. Tucker, 626 So.2d 707 (La.1993).

DECREE
Accordingly, the decision of the trial court, denying the defendant's Motion to Suppress, is AFFIRMED.
NORRIS, C.J., concurs.
NORRIS, C.J., concurring.
On this record, I would not have found that the defendant's actions were truly voluntary. The conduct of this deputy came dangerously close to constituting an illegal search. However, affording the District Court its great discretion with respect to factual calls, I concur in the result.