912 So.2d 394 (2005)
STATE of Louisiana, Appellee
v.
Brandon G. MALONE, Appellant.
No. 39,996-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 2005.
*395 James E. Beal, Jonesboro, Indigent Defender Board, Paula Marx, Louisiana Appellate Project, Lafayette, for Appellant.
*396 Walter E. May, District Attorney, Douglas Stokes, Assistant District Attorney, for Appellee.
Before BROWN, DREW, and LOLLEY, JJ.
BROWN, C.J.
Defendant, Brandon G. Malone, was charged with possession of a Schedule II substance, cocaine. He pled guilty as charged but reserved his right to appeal a denial of his motion to suppress the cocaine seized pursuant to State v. Crosby, 338 So.2d 584 (La.1976).[1]

Discussion
There is no dispute that defendant was stopped for a minor traffic offense, making a left turn without using a turn signal. Further, the officer neither arrested nor intended to arrest defendant. The issue involved in this case is whether defendant consented voluntarily to empty his pockets and step out of his shoes.

Testimony at Motion to Suppress Hearing
The incident giving rise to this charge occurred on a public street in the city of Jonesboro, Louisiana, on May 6, 2004, at approximately 7:30 p.m. Jackson Parish Sheriff's Deputy Jason Robinson observed a vehicle driven by defendant make a left turn without using a turn signal. Deputy Robinson stopped the vehicle. Defendant's two-year-old son was the only passenger. Deputy Robinson asked defendant to exit the vehicle and show his driver's license, registration slip, and proof of insurance. Defendant cooperated. The deputy observed that defendant appeared "real nervous, real fidgety acting." At that point, Deputy Robinson requested that defendant stand between the rear of defendant's car and the front of the patrol car, out of the flow of traffic. Deputy Roger Curry arrived on the scene as "back-up."
Deputy Robinson questioned defendant regarding whether he had any weapons or illegal narcotics on his person or in his vehicle. Defendant said that he did not have any weapons or drugs of any kind. Deputy Robinson then asked defendant whether he "minded" emptying out the contents of his pockets onto the front of the patrol car. Defendant replied that he did not mind and complied with the request. A routine patdown for weapons was conducted. Defendant acted "real suspicious"  he kept "crossing his feet and twisting back and forth." Deputy Robinson then asked defendant, "[I]f you do not mind step out of your right shoe for me." According to the deputy, defendant responded, "no problem," and took his foot out of his right shoe. Deputy Robinson placed his hand on defendant's back, reached down and picked up defendant's right shoe. After determining that the shoe did not contain any substances, Deputy Robinson placed the shoe back on the ground and defendant put it back on his foot. Then Deputy Robinson, with his hand still on the small of defendant's back, asked him if he did not mind stepping out of his left shoe. Defendant initially asked, "What?" After Deputy Robinson repeated his request, defendant, while shaking his head in a disgusted manner, slipped off his left shoe.
Deputy Robinson observed a small wad of paper fall out of defendant's shoe onto the ground. Deputy Robinson picked up the wad of paper, which was a Wal-Mart *397 receipt containing what appeared to be a piece of rock cocaine. Defendant was then advised of his Miranda rights and placed under arrest. A ticket for the turn signal traffic violation was not issued.
Deputy Robinson testified that on a routine traffic stop he always asks about possession of illegal narcotics and if the violator "minds" stepping to the front of the patrol car and emptying the contents of his pockets. Then, if the deputy has a "slight suspicion of anything illegal going on," he asks if they would not "mind" stepping out of their shoes. Deputy Robinson indicated that if defendant had refused, that would have been the end of the "situation." However, he did not tell defendant that compliance with these requests was voluntary and that defendant could refuse at any time and be on his way. Deputy Curry's testimony corroborated the testimony given by Deputy Robinson.
Defendant denied consenting to anything and stated that he was told to empty his pockets and take off his shoes by Deputy Robinson. He asserts that Deputy Robinson never indicated that he was free to leave, nor did he tell him he had the right to refuse to take off his shoes. Defendant testified that he felt like if he didn't take off his shoes, "[the deputies] wouldn't have just let me go."

Applicable Legal Principles

Initial Stop
Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article 1, § 20 of the Louisiana Constitution of 1974. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29 (La. 1985); State v. Lain, 347 So.2d 167 (La. 1977). The state bears the burden of proving one of these exceptions applies. La. C. Cr. P. Art. 703(D); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Tatum, supra; State v. Barnard, 37,032 (La.App. 2d Cir.05/14/03), 847 So.2d 99.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Waters, 00-0356 (La.03/12/01), 780 So.2d 1053; State v. Barnard, supra. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Whren v. U.S., supra. This objective standard is indifferent to the relatively minor nature of a traffic violation. State v. Barnard, supra.
In Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the U.S. Supreme Court reaffirmed its position first espoused in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that officer safety concerns during routine traffic stops justify the minimal additional intrusion of ordering a driver and passenger out of the vehicle. The courts of this state have also affirmed this practice in order to protect both the officer and the vehicle's occupants during a traffic stop. State v. Benoit, 01-2712 (La.05/14/02), 817 So.2d 11; State v. Bright, 03-489 (La.App. 5th Cir.10/28/03), 860 So.2d 196, writ denied, 03-3409 (La.04/02/04), 869 So.2d 875.
In conducting a traffic stop, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional *398 criminal activity. La. C. Cr. P. art. 215.1(D). This statute also provides that "nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with the administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950." La. C. Cr. P. art. 215.1(D) permits an officer to conduct a routine driver's license and vehicle registration check and engage in conversation with a driver and his passenger. See State v. Lopez, 00-0562 (La.10/30/00), 772 So.2d 90.
Clearly, the initial stop of defendant by Deputy Robinson was valid. Deputy Robinson testified that he observed the vehicle defendant was driving make a left turn without use of a turn signal. Safety concerns during this routine stop justified the minimal additional intrusion of ordering defendant, the driver, out of the vehicle. State v. Benoit, supra; State v. Bright, supra. It is also clear that Deputy Robinson had the right to conduct a routine license, registration, and insurance check and engage defendant in conversation. State v. Lopez, supra. However, Deputy Robinson does not contend that he had a reasonable suspicion of additional criminal activity. Rather, he claims that defendant consented to emptying his pockets and stepping out of his shoes.

Consent
A warrantless search conducted pursuant to valid consent is permitted by the Louisiana and United States Constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Williams, 38,379 (La. App. 2d Cir.11/25/03), 858 So.2d 878, writ denied, 03-3535 (La.03/12/04), 869 So.2d 807, on subsequent appeal, 39,660 (La.App. 2d Cir.04/06/05), 900 So.2d 259; State v. Crews, 28,153 (La.App. 2d Cir.05/08/96), 674 So.2d 1082. Oral consent to a search is valid. State v. Crews, supra. Consent is valid when it is freely and voluntarily given. State v. Bodley, 394 So.2d 584 (La. 1981); State v. Owens, 480 So.2d 826 (La. App. 2d Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). Once voluntary consent is given, it continues until it is revoked or withdrawn. As held by the U.S. Supreme Court in Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), when officers rely upon consent to justify a warrantless search, they have no more authority than they have been given by the consent. Therefore, any search beyond the permitted intrusion invalidates the voluntariness of the consent given to the extent that the search exceeds the parameters for which the permission was granted. See State v. Riggins, 2004 WL 1800714 (Ohio App. 1st Dist.2004), appeal not allowed, 104 Ohio St.3d 1439, 819 N.E.2d 1123 (2004).
Clearly, consent can be limited, in time, duration, area, and intensity, and it may be revoked at any time, even after the search has begun. Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization. Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); State v. Riggins, supra. These limitations may be express or implied. The standard for measuring the scope of a suspect's consent is that of "objective reasonableness"  what the typical reasonable person would have understood by the exchange between the officer and suspect. Florida v. Jimeno, supra.
In the instant case, defendant was not immediately free to leave; in fact, he was never advised that he could do so. Defendant was told to stand in front of the police cruiser and was patted down for weapons. The officers never used words like "consent" or "voluntary." Instead, Deputy Robinson put his hand on defendant's back and said "would you mind." At night, to *399 someone standing in front of a police cruiser's headlights, "would you mind" could sound coercive to one unaware that he is free to leave. The deputies were obviously on a fishing expedition and used innovative practices to bypass the rules of search and seizure.
Even so, both officers testified that defendant complied with their "would you mind" requests up to the point when they asked him to step out of his left shoe. At that time, defendant asked "what?" and shook his head from side to side before complying. Considering the totality of the "situation," a "typical reasonable person" viewing this exchange would not have understood the exchange between defendant and Deputy Robinson at that point to have been voluntary or consensual. Instead, defendant's remark, hesitation, and overt reluctance to continue with the search were inconsistent with consent and, to an objective person, suffice to reasonably communicate at least the withdrawal of defendant's consent.

Conclusion
For the reasons set forth above, we reverse the trial court's denial of the motion to suppress and order the cocaine seized suppressed. We therefore set aside defendant's guilty plea and remand for further proceedings.
REVERSED and REMANDED.
DREW, J., dissents with written reasons.
DREW, J., dissenting:
While acknowledging that this case is a close call, I must respectfully dissent. The trial court got it right.
The majority and I apparently agree with the trial court that there is no palpable Fourth Amendment violation relative to the stop, the frisk, the request to empty pockets, the request to remove the right shoe, and the length of the detention. We also agree that once voluntary consent is given, it continues until it is revoked or withdrawn.
Concerning removal of the left shoe, however, I part ways with the majority. The gut issue is whether the removal of the second shoe was consensual. The defendant, when asked to remove the second shoe, turned around, said one word,[1] shook his head disgustedly, and immediately removed the shoe, revealing the contraband. From these facts, I cannot conceive how the officer should be expected to somehow infer that the encounter became involuntary. This is merely exasperated, yet consensual compliance to a request, during calm interaction with a peace officer: no guns drawn, cursing, demands, show of force, nor any indicia of compulsion.
The majority complains that the officer never advised the defendant that he was free to leave. This is not required. See Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).
In brief, the defendant relies upon one Louisiana case: State v. Cooper, 36,472 (La.App. 2d Cir.10/23/02), 830 So.2d 440.[2]Cooper has absolutely nothing in it relative to a request to empty pockets, shoes, or anything else. There, I wrote to suppress evidence taken from the person of a suspect, where the officer searched for evidence, without asking permission, and without probable cause.
The goose case, not mentioned by anybody, is State v. Shaw, 31,786 (La.App. 2d Cir.3/31/99), 736 So.2d 951.[3] Shaw's voluntary *400 compliance with a request to empty her pockets produced drugs, which we refused to suppress. We noted there, and I note here, that the consensual disclosure of contraband is not even a search  it is a plain view seizure and clearly admissible. Probable cause is not required.
The facts of this current case are only slightly more intrusive than Shaw. More scrutiny should always be given to a situation when an officer, with no reasonable suspicion that the subject is armed, and with no probable cause that the subject possesses other contraband, asks the subject to disrobe or remove items of clothing. Even so, the officers actions here were reasonable, and the trial court's ruling was correct. This de minimus expansion of Shaw does not violate the Fourth Amendment to the United States Constitution, nor does it offend the sense of justice.
With respect, I dissent.
NOTES
[1] Defendant was given a suspended three-year hard labor sentence and was placed on three years supervised probation. Defendant was also ordered to pay all costs within 60 days, a $500 fine within six months, $500 to the Jackson Parish Sheriff's Office Drug Enforcement fund within one year, and $55 per month as a probation supervision fee.
[1] "What?"
[2] Another Jonesboro case.
[3] Yet another Jonesboro case.