STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 0461

STATE OF LOUISIANA

VERSUS

MICHAEL BOEH

Judgment Rendered: **APR 1 6 2021**

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 578771

Honorable Reginald T. Badeaux, III, Judge Presiding

* * * * *

Warren L. Montgomery
Matthew Caplan
Covington, LA

Attorneys for 1st Appellant-Appellee,
State of Louisiana

Gwendolyn K. Brown
Baton Rouge, LA

Attorney for 2nd Appellant-Appellee-Defendant,
Michael Boeh

* * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**HESTER, J.**

The defendant, Michael Boeh, was charged by bill of information with possession of 400 or more grams of cocaine, a violation of La. R.S. 40:967(F) (prior to repeal by 2017 La. Acts, No. 281, § 3). The defendant pled not guilty. The defendant filed a motion to suppress evidence. Following a hearing on the matter, the motion was denied.[1] The defendant withdrew his not guilty plea and, pursuant to **State v. Crosby**, 338 So.2d 584 (La. 1976), pled guilty, reserving his right to challenge the trial court's denial of his motion to suppress. The State then filed a habitual offender bill of information.[2] Prior to the habitual offender hearing, the trial court sentenced defendant to fifteen years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, while also acknowledging the forthcoming habitual offender hearing. The defendant filed a motion requesting the trial court to sentence him below the mandatory minimum sentence of the Habitual Offender Law. The defendant stipulated to the allegations in the habitual offender bill. The trial court adjudicated the defendant a fourth-felony habitual offender, vacated the original fifteen-year sentence, and resentenced the defendant to five years imprisonment at hard labor without benefit of probation or suspension of sentence. The State filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating six assignments of error. The State appeals, designating one assignment of error. We affirm the conviction and habitual offender adjudication. We vacate the five-year sentence and remand for resentencing.

---

[1] The defendant filed a motion to reconsider the denial of the motion to suppress. The trial court denied the motion. The defendant filed a writ application with this court, which was denied on August 17, 2017. The defendant then sought review with the supreme court, which was denied on November 17, 2017. **State v. Boeh**, 2017-0960 (La. App. 1st Cir. 8/17/17), 2017 WL 3574174 (unpublished), writ denied, 2017-1570 (La. 11/17/17), 230 So.2d 218.

[2] The defendant has prior convictions for possession with intent to distribute marijuana, trafficking in controlled dangerous substances, and drug trafficking.

2

# FACTS

The following facts are based on the testimonies of Louisiana State Troopers Ron Whitaker, Jr. and Jason Boyet at the motion to suppress hearing.

On July 12, 2016, around 2:00 a.m., the defendant was driving alone on I-12 in St. Tammany Parish when he observed Trooper Whitaker approaching him from behind. The defendant moved to the left lane, touched the left fog line, then moved back into the right lane. Trooper Whitaker effected a traffic stop.

The defendant told Trooper Whitaker he was coming from Houston. When Trooper Whitaker asked the defendant for his driver's license, the defendant said it was in the trunk. Upon further questioning, Trooper Whitaker learned that the defendant was driving a rental car, rented by Victoria Curtis, whom the defendant identified as his girlfriend. The defendant was not an authorized driver on the rental agreement. Trooper Whitaker ran a criminal history check, revealing the defendant had prior arrests for illegal narcotics in Texas, with one of the arrests involving between five to fifty pounds of marijuana.

Trooper Whitaker prepared a consent to search form, and Trooper Boyet arrived at the scene to assist with the search. The defendant acknowledged that he had a prior drug arrest and consented, orally and in writing, to a search of the car.

The defendant was directed to stand at the front of the rental car. Both troopers searched different areas of the car. Trooper Boyet began searching the backseat area of the car. According to Trooper Whitaker, the defendant became anxious at this point and told the trooper he wanted to go. Trooper Whitaker informed the defendant that he could stop the search, but that he (the trooper) was going to put the back seat back in place, which had been removed for the search. The defendant said to stop the search. Trooper Whitaker approached Trooper Boyet to tell him to stop searching.

3

Trooper Boyet got out of the back seat with a cereal box and told Trooper Whitaker that he had found something. Inside the cereal box was a broken off portion of a brick of cocaine, which weighed about 425 grams.

Trooper Whitaker also testified that Louisiana State Trooper Denis Indest conducted a follow-up investigation and interviewed the defendant. According to Trooper Indest's report, the defendant purchased 420 grams of cocaine for $11,800 and was going to sell it to make an $8,200 profit.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the trial court erred in finding probable cause to justify the initial stop.

According to the defendant, Trooper Whitaker's reckless, illegal actions of speeding up behind the defendant at a very fast rate and at a very close distance, caused him to move to the other lane and cross over the fog line.

As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. **State v. Zeno**, 2014-0325 (La. App. 1st Cir. 9/19/14), 155 So.3d 4, 18, writ denied, 2014-2167 (La. 5/22/15), 170 So.3d 983; see also **Whren v. United States**, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996).

In the instant case, Trooper Whitaker testified that he stopped the defendant because when the trooper drove up behind him, the defendant moved to the left lane. The defendant then crossed the left fog line, then moved back to the right lane. Trooper Whitaker testified that he did not know if the defendant was falling asleep,

4

drinking, or on his cell phone. A car which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the shoulder of the road therefore provides the police with probable cause to believe that a traffic violation for improper lane use has occurred. **State v. Waters**, 2000-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).

Accordingly, Trooper Whitaker had probable cause to believe a traffic violation had occurred when the defendant drove onto the fog line. Nothing in his testimony suggested that Trooper Whitaker did anything improper in his own driving. The stop and subsequent search of the rental vehicle was captured by the dash camera in Trooper Whitaker's car. The trial court viewed the video and found that the traffic stop was proper. We find no reason to disturb this ruling.

This assignment of error is without merit.

## ASSIGNMENTS OF ERROR NOS. 2 - 5

The following four assignments of error advanced by the defendant are so interrelated that we will address them together: (2) the trial court erred in finding his revocation of his consent was not sufficiently in advance of Trooper Boyet's discovery of the contraband to be valid; (3) even if the discovery of the contraband occurred simultaneously with the revocation of consent to search, a tie would favor the defendant because the State bears the burden of proof that the consent was still voluntary at the time the contraband was located; (4) the revocation of consent to one officer applies to all officers involved in the search; and (5) the trial court erred in denying the motion to suppress. These assignments of error all address the same issue – that the defendant revoked his consent to search the vehicle prior to, or at the same time, that Trooper Boyet found the cocaine in the vehicle – and, as such, the trial court erred in denying the motion to suppress the evidence.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and

5

seizures. A defendant adversely affected may move to suppress any evidence from use at a trial on the merits on the ground that it was unconstitutionally obtained. La. Code Crim. P. art. 703(A). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony. **State v. Jones**, 2001-0908 (La. App. 1st Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 2002-2989 (La. 4/21/03), 841 So.2d 791. Reviewing courts should defer to the credibility findings of the trial court unless its findings are not adequately supported by reliable evidence. **State v. Harris**, 2011-0779 (La. App. 1st Cir. 11/9/11), 79 So.3d 1037, 1040 (citing **State v. Green**, 94-0887 (La. 5/22/95), 655 So.2d 272, 281). However, a trial court's legal findings are subject to a *de novo* standard of review. See **State v. Hunt**, 2009-1589 (La. 12/1/09), 25 So.3d 746, 751.

Exceptions to the warrant requirement are carefully drawn and the State must show that exigencies justify the intrusion. **State v. Tanner**, 96-0708 (La. App. 4th Cir. 5/21/97), 696 So.2d 111, 115, writ denied, 97-1665 (La. 11/21/97), 703 So.2d 1306. A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the State to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. **State v. Coleman**, 2014-0402 (La. 2/26/16), 188 So.3d 174, 192. Consent can be limited and revoked at any time, even after a search has commenced. **State v. Malone**, 39,996 (La. App. 2nd Cir. 9/23/05), 912 So.2d 394, 398. See **State v. Rawls**, 552 So.2d 764, 767 (La. App. 1st Cir. 1989).

Based on our review of the record, we find the trial court did not err in finding the defendant did not revoke his consent before Trooper Boyet found the cocaine in the vehicle. The testimony at the motion to suppress hearing established that the defendant was standing at the front of the rental vehicle while it was being searched.

The defendant could see where Trooper Boyet was at in the vehicle and was relatively calm until he saw Trooper Boyet enter the backseat from the passenger side of the car (in the few seconds prior to the 27:49 mark of the dash cam video),[3] which is where the cocaine was located. It is important to note that prior to this moment in time, the defendant, twice, tried to walk toward the rental car despite repeated instructions to remain in front of the car. According to Trooper Whitaker, the defendant was almost to the point of being "belligerent". The defendant then threw his hands in the air and told Trooper Whitaker that he wanted to go. Trooper Whitaker told the defendant that the backseat had been removed for the search and that they needed to put the seat back in before letting him leave.

At the 28:03 mark of the video, the defendant said he wanted the search to stop. Again, Trooper Whitaker informed the defendant that the search would be stopped, but the seat would have to be reattached before he would be allowed to leave. Trooper Whitaker walked to the vehicle to tell Trooper Boyet to stop searching. At the 28:17 mark (14 seconds after the defendant revoked consent), Trooper Boyet got out of the vehicle and told Trooper Whitaker that the cereal box was "loaded."

Trooper Boyet testified that, having been in the car searching, he had not heard any of the conversation between Trooper Whitaker and the defendant. When Trooper Whitaker told Trooper Boyet to stop searching, Trooper Boyet had already found the drugs in the cereal box. Trooper Boyet also testified that he had been in law enforcement for nineteen years and had participated in several hundred narcotics investigations, including large narcotics seizures on the interstate. In the instant matter, when he was in the process of reattaching the backseat, Trooper Boyet saw a cereal box in a plastic grocery bag on the rear driver's side floorboard. He grabbed

---

[3] The video time stamps come from testimony only. The defendant did not make the video of the stop and search a part of the appellate record.

the cereal box, squeezed it, and, based on his experience, could feel the hard brick of drugs inside the box. He also recognized that the weight of the cereal box was different from a typical box of cereal. Accordingly, the defendant's withdrawal of consent was untimely.

The defendant suggests that informing one officer of his revocation of consent to search is imputed to all officers involved in the search. We have found no supporting case law for this proposition, and the defendant has not cited to any law in his brief. Moreover, even if this were the case, which would suggest that the defendant's revocation may have come prior to Trooper Boyet's finding the cocaine, the contraband would have properly been admitted at trial because it would inevitably have been seized by the police in a constitutional manner. See **Nix v. Williams**, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

The inevitable discovery doctrine is in reality an extrapolation from the independent source doctrine. Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered. **Murray v. United States**, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement *would* have inevitably secured the evidence by lawful means, not simply that they *could* have. Thus, a mere showing that the police had probable cause for a search and could have secured a warrant from a neutral magistrate does not satisfy the doctrine, because it would effectively obviate the Fourth Amendment preference for warrants and reduce the exclusionary rule to cases in which the police lack probable cause. **State v. Lee**, 2005-2098 (La. 1/16/08), 976 So.2d 109, 127, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).

8

Trooper Whitaker made clear at the motion to suppress hearing that had the defendant refused to consent to the search, the trooper would have brought a K-9 unit to the scene:

> And we explain that to them when we ask for consent, that they have a right to refuse. So obviously he could have refused right then. Typically what happens on the side of the road like that, if he would have refused when I initially asked him for consent, then we have a K-9 unit assigned to us, so we would request the assistance of that K-9 unit to do a "free air" sniff.

Later, the following exchange with Trooper Whitaker took place:

> Q. And if he would have revoked consent at any point, you would have called the K-9 dog?
>
> A. Yes.

Louisiana Code of Criminal Procedure article 215.1(D) provides that in conducting a traffic stop "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity." During the stop, the officer has the right to conduct a routine license and registration check and, while doing so, may engage in conversation with the driver and any passenger. See **State v. Lopez**, 2000-0562 (La. 10/30/00), 772 So.2d 90, 92-93 (per curiam); **State v. Barnes**, 2012-0615 (La. App. 1st Cir. 11/2/12), 2012 WL 5387692, *4 (unpublished), writ denied, 2013-0634 (La. 8/30/13), 120 So.3d 264. If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. **United States v. Sharpe**, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account. **State v. Kalie**, 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (per curiam).

Even at the point the defendant was asked for consent, prior to any search of the car, Trooper Whitaker had reasonable suspicion to prolong the traffic stop. Based on just his initial contact with the defendant, Trooper Whitaker learned the defendant had previous drug arrests in Texas; he was coming back from Houston at 2:00 a.m.; his driver's license was in the trunk; his hands were shaking; he was wearing a wedding ring, but told the trooper the rental agreement was in his girlfriend's name; his name was not listed as an authorized driver on the rental agreement; and he never turned off his turn signal, even when he got out of the car.

After the search of the car had begun, as Trooper Boyet got closer to the cereal box in the back, the defendant became increasingly anxious and agitated, refusing to follow commands. Thus, the trooper's reasonable suspicion had increased exponentially by this point. As such, prolonging the traffic stop for several more minutes to call in a K-9 unit would have been justifiable and reasonable. See **State v. Coleman**, 2019-1458 (La. App. 1st Cir. 6/12/20), 305 So.3d 878, 882, writ denied, 2020-00868 (La. 10/20/20), 303 So.3d 294. Cf. **Rodriguez v. United States**, 575 U.S. 348, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) (the police may not extend an otherwise completed traffic stop, *absent reasonable suspicion*, in order to conduct a dog sniff).

Based on the foregoing, these assignments of error are without merit.

### ASSIGNMENT OF ERROR NO. 6

In his sixth assignment of error, the defendant argues the trial court erred in adjudicating him a habitual offender. The defendant asserts that he was not adjudicated a habitual offender and that he was not informed of his rights prior to stipulating to being a habitual offender.

The defendant is incorrect. At a sentencing hearing, the defendant stipulated to being a fourth-felony habitual offender. All parties agreed to this with the trial court's consent. Later at this same hearing, the trial court stated: "You agreed that

10

you're a fourth felony offender. And as such, I agree and I find you to be a fourth felony offender."

At the habitual offender arraignment, the defendant was given his entire panoply of rights by the trial court. The defendant denied the allegations in the habitual offender bill of information by refusing to plead. Subsequently, as noted, the defendant withdrew his denial and stipulated to being a fourth-felony habitual offender. There is no requirement that the defendant should have been explained his rights a second time when he stipulated to being a habitual offender. See **State v. Gonsoulin**, 2003-2473 (La. App. 1st Cir. 6/25/04), 886 So.2d 499, 501-02 (en banc), writ denied, 2004-1917 (La. 12/10/04), 888 So.2d 835.

This assignment of error is without merit.

## STATE'S ASSIGNMENT OF ERROR

In the State's sole assignment of error, it argues that the trial court erred in granting a downward departure from the mandatory minimum sentence required by the Habitual Offender Law.

For the instant offense, the defendant was sentenced to fifteen years at hard labor. Prior to his adjudication as a fourth-felony habitual offender and resentencing therein, the defendant filed a motion to request the trial court to sentence him below the mandatory minimum sentence under the Habitual Offender Law.

At the habitual offender sentence hearing, the trial court, after hearing argument, vacated the defendant's fifteen-year sentence and resentenced him, pursuant to **State v. Dorthey**, 623 So.2d 1276, 1280-81 (La. 1993), to five years imprisonment at hard labor. The defendant's sentencing range was twenty to sixty years imprisonment at hard labor. In its reasons for reducing the defendant's sentence to below the mandatory minimum sentence, the trial court stated the following:

11

Right. It was half a cereal box. I believe the weight was one-half a kilo. But I won't get into the facts of that anymore. I'm already on the record as to what I thought about the motion to suppress.

It was close, though. It was close. I was impressed that Mr. Boeh was very cooperative on the side of the road. And more than that, very respectful as well.

In looking at those other convictions, I'll note that two of those priors were involving either distribution or possession with intent to distribute marijuana.

Which if you look at those cases across the country right now, you've got a few states, the State of Washington and the State of Illinois just recently, where they legalized not only the recreational use of marijuana but they're going to go back and expunge everybody's conviction and dismiss all those marijuana charges, which makes sense.

That would be like once you legalize it, you know what, why keep them convicted of that under the idea that that was the law then. Actually, I agree with that move and I think it's rather just.

I do think also Mr. Boeh is exceptional, maybe not because of his criminal history but he was an honorably discharged veteran. He was a civil servant. He was a postal carrier for ten years. And he just fell on hard times.

At the time I originally was looking at this case, I said, [w]ell, he came such a long way. I remember the car he was driving had New York plates. I'm not sure if he was from there or not or going back and forth.

But I said that's a long way to go for just half a kilo. Because I was thinking he was just a real small time dealer. But really I'm more convinced now that he was just landing on hard times, that he decided to accept some easy quick cash as a mule.

So to take into consideration the justice reformation acts and also *Dorthey*, I do find even though he's already stipulated he's a fourth offender, which I accept, I notify you now there's no further hearings on that.

You agreed that you're a fourth felony offender. And as such, I agree and I find you to be a fourth felony offender. But I do think 20 years as a minimum for a fourth offender would be unconstitutionally harsh, just the piling on of punishment for this act.

And I will, applying that rationale of *Dorthey*, find that the least amount of time to sentence you to would be 5 years, which I sentence you to as a habitual offender under [15:529.1], et seq., to serve 5 years hard labor with the Department of Corrections without benefit of probation or suspension of sentence, with credit for time served for any

12

time you served on this charge subsequent to your arrest and incarceration on this charge.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Livous**, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1044, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. **State v. Scott**, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So.3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So.3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. Code Crim. P. art. 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **Scott**, 228 So.3d at 211. The trial judge should review the defendant's personal history, his prior

13

criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981); **State v. Spikes**, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So.3d 201, 204-05. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **State v. Thomas**, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).

In **Dorthey**, 623 So.2d at 1280-81, the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In **State v. Johnson**, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when **Dorthey** permits a downward departure from the mandatory minimum sentences under the Habitual Offender Law.

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as nonviolent should not be discounted, this factor has already been

14

taken into account under the Habitual Offender Law for third and fourth offenders. **Johnson**, 709 So.2d at 676.

To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. **Johnson**, 709 So.2d at 676-77.

The defendant's background and history were provided by way of a memorandum and argument by counsel at the sentencing hearing. According to the defendant, he grew up poor and enlisted in the Marines, where he served for just under four years. Following this, he ran a mail route for the Post Office for ten years. After medical complications from a car accident, he was let go from this job at age 33. From this point on, he began distributing drugs. Since 2002, the defendant has been convicted at least five times for narcotics related offenses, including possession with intent to distribute marijuana, trafficking controlled dangerous substances, and drug trafficking. In 2018, when the defendant pled guilty to the instant offense, he was 51 years old.

We agree with the State that the trial court relied on factors that do not justify a downward departure. Even considering all facets of defendant's life relied upon

15

by the trial court, there is nothing particularly unusual about the defendant's circumstances that would justify a downward departure from the minimum twenty-year sentence mandated under La. R.S. 15:529.1. Over twenty years ago, the **Johnson** court, 709 So.2d at 676-77, opined that the legal downward departures from minimum sentences under the Habitual Offender Law should be rare. Fifteen years after the **Johnson** decision, our supreme court reaffirmed its position when it noted that departures from mandatory minimum sentences by their nature *must be exceedingly rare*, and the class of exceptional offenders for whom presumptively-constitutional mandatory minimum terms of imprisonment are nevertheless excessive as applied to them, exceedingly narrow. **State v. Noble**, 2012-1923 (La. 4/19/13), 114 So.3d 500, 501 (per curiam).

Accordingly, we find that the trial court imposed an illegally lenient sentence. The defendant has not proven by clear and convincing evidence that he is exceptional such that at least a twenty-year sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See **Johnson**, 709 So.2d at 676. The defendant's five-year sentence is vacated and this matter is remanded for resentencing.

**CONVICTION AND HABITUAL OFFENDER ADJUDCIATION AFFIRMED; FIVE-YEAR ILLEGALLY LENIENT SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

16